CA A50427 argued and submitted June 30, 1989, resubmitted In Banc July 21, 1990; CA A51174 argued and submitted November 20, 1989, resubmitted In Banc July 21, 1990; CA A61024 argued and submitted February 14, resubmitted In Banc July 21, 1990, *State v. Ingram:* affirmed; *State v. Devereaux:* order reversed with respect to suppression of evidence seized from defendant's residence; otherwise affirmed, *State v. Gardner:* judgment vacated and remanded for further proceedings November 21, 1990, reconsideration denied February 13, petition for review allowed April 16, 1991

(311 Or 266)

STATE OF OREGON,
*Respondent,*

*v.*

THEODORE J. INGRAM,
*Appellant.*

(88C-21014; CA A50427)

Dale L. Crandall, Salem, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

STATE OF OREGON,
*Appellant,*

*v.*

JAMES RICHARD DEVEREAUX, JR.,
*Respondent.*

(10-88-03617; CA A51174)

Janet Klapstein, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Kenneth Morrow, Eugene, argued the cause for respondent. With him on the brief was Morrow, Monks & Sharp, P.C., Eugene.

STATE OF OREGON,
*Respondent,*

*v.*

LINDA MARIE GARDNER,
*Appellant.*

(88P-3379; CA A61024)
(Cases Consolidated for Opinion)

802 P2d 656

Joseph E. Penna, Monmouth, argued the cause and filed the brief for appellant.

Wendy J. Paris, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

EDMONDS, J.

Richardson, J., concurring in part; dissenting in part. Newman, J., concurring in part; dissenting in part.

## EDMONDS, J.

The common issue in each of these cases is whether the search warrant complies with ORS 133.565(2)(b) and Article I, section 9, of the Oregon Constitution, which require that a person to be searched be described with particularity. For this opinion, we consolidate *State v. Ingram,* CA A50427; *State v. Devereaux,* CA A51174; and *State v. Gardner,* CA A61024.

In *State v. Ingram,* defendant appeals his conviction for possession of a controlled substance. ORS 475.992(4). He argues that the trial court erred in denying his motion to suppress evidence seized from his pickup during the execution of a search warrant. The warrant authorized the search of a residence and "[a]ll individuals and occupants found to be frequenting said premises and all vehicles determined to be associated with the occupants of said premises."

The warrant was issued on the basis of an affidavit by Officer Nelson in which he said that Elaine Sink's residence was being used as a place to sell controlled substances. He also described different transactions that had occurred there:

"Elaine Joyce Sink went on to say that she always had a supply of cocaine and that your affiant could phone her at her residence in order to receive cocaine.

"Elaine Joyce Sink advised she handles a minimum of five to seven thousand dollars in drug business through her residence each week.

"* * * * *

"Your affiant approached the residence of Elaine Joyce Sink, located at 4155 Lancaster Drive NE, Salem, space #57 at 1037 hours. * * * Elaine Joyce Sink came to the door and allowed your affiant to enter. Your affiant immediately became aware of a very strong odor of marijuana smoke in the trailer. * * * Sink invited your affiant to the rear portion of the trailer. We entered what appeared to be the middle bedroom of the trailer off the hallway. When entering this room, your affiant noted there were two scales set up on a desk, one was an Ohaus scale and the other was a RCBS scale. * * * Elaine Joyce Sink pulled two separate bags of marijuana from a box in the room.

"* * * * *

"Your affiant arranged to go to Elaine Joyce Sink's residence

to purchase some more marijuana. * * * [S]he directed your affiant back into her business room for the drug sale. She weighed the substance which was provided to her by Stephen Thomas Drynan and it weighed just shy of 1/2 ounce of thai [*sic*] marijuana.

"* * * * *

"Your affiant arrived at Elaine Joyce Sink's residence located at 4155 Lancaster Drive NE Salem, space #57 at 1150 hours and entered. She directed your affiant back to the middle bedroom area of her trailer house where your affiant again observed the two separate scales for weighing cocaine and marijuana. Elaine Joyce Sink opened up her portable safe and removed (1/8th) one-eighth ounce of cocaine which was already weighed and·packaged in a plastic baggie. * * * Elaine Joyce Sink pulled out a plastic baggie containing approximately (1/2) one-half ounce of cocaine and showed it to your affiant. She advised your affiant she also had two other plastic baggies containing quantities of marijuana and the aforementioned thai [*sic*] and 'green' bud marijuana.

"* * * * *

"*On April 8, 1988* at approximately 1100 hours your affiant called Elaine Joyce Sink and arranged to conduct a marijuana transaction. Your affiant arrived at her residence at 1120 hours and knocked on the door. Elaine Joyce Sink yelled from within the trailer house to come in. Your affiant entered the trailer and she directed the affiant back to the middle bedroom where your affiant again observed the two sets of scales which Elaine Joyce Sink uses to weigh out quantities of cocaine and marijuana for distribution. She opened the portable safe with her keys and your affiant observed various quantities of packed cocaine and marijuana. Your affiant was purchasing (1) one ounce of marijuana from Elaine Joyce Sink and she removed approximately (1) one ounce from a half pound bag." (Emphasis in original.)

In addition, the affidavit describes multiple transactions at Sink's residence and other places involving numerous individuals over the next several weeks.

When the officers arrived at Sink's residence to execute the warrant, a pickup was the only vehicle parked in the vicinity. Nelson knocked on the door, identified himself as "Ron" and was admitted by defendant. There was no one else in the residence. Defendant was holding a piece of paper that

indicated that he had been taking telephone messages. The trial court found that

> "defendant was the only person present in the [residence], and the defendant reasonably appeared to be, and in fact was, exercising lawful and exclusive dominion and control over the premises. However, the executing officers did not then believe, and no reasonable basis then existed for the officers to believe, that the defendant was a person who frequented the premises."

Despite the fact that nearly all of the individuals and vehicles described in Nelson's affidavit were identified by name, neither defendant nor his vehicle were described or mentioned. Nelson searched defendant.

The trial court's written findings describe what occurred next:

> "Among the items found in the search of the defendant were a quantity of marijuana and the key to a vehicle. After finding the key, Officer Nelson read defendant's Miranda Rights to the defendant and then asked the defendant if the key was to the defendant's vehicle. The defendant understood his rights and knowingly, intelligently and voluntarily waived them by responding to the officer's question and acknowledging that the key was to the defendant's vehicle. Officer Nelson then informed defendant that he had a search warrant to search vehicles associated with the described premises and stated his desire to search the defendant's vehicle. The defendant indicated that he did not object. Defendant's response to Officer Nelson's assertion of authority to search vehicles associated with the premises was equivocal and was not a knowing, voluntary and intelligent consent to the search of defendant's vehicle by police officers."

The officers searched the pickup parked in front of the residence and found the contraband that is the basis of the charge.

The trial court concluded that the search of defendant's person and pickup were authorized by the warrant, but were not otherwise authorized by any exception to the warrant requirement. The defendant then stipulated to the fact that controlled substances were found in his pickup, and the court found him guilty. No evidence seized from the residence or defendant's person was offered.

On appeal, defendant argues that he was not a member of the class of persons authorized to be searched by the warrant and that the warrant was not sufficiently particular under ORS 133.565(2)(b) and Article I, section 9. He asserts that suppression of the evidence found in his pickup is necessary, because the unlawful search of his person resulted in the officer finding the key that led to the search of his vehicle. The state argues that there is no statutory or constitutional requirement that persons be specifically named when a warrant for the search of premises also authorizes the search of persons found on the premises.

In *State v. Devereaux,* defendant was indicted for unlawful possession and delivery of a controlled substance. ORS 475.992. The state appeals from an order granting defendant's motion to suppress evidence seized from his residence and person pursuant to a search warrant. ORS 138.060(3). The trial court granted the motion on the basis of its apparent conclusions that the affidavit supporting the warrant failed to establish probable cause to search the residence, that the information contained in the affidavit was stale and that the warrant was defective, because it did not specifically name defendant. The affiant stated in his affidavit:

> "Since early February, 1988, I have become involved in an undercover investigation targeted at identifying and prosecuting individuals who are selling controlled substances in the Oakridge community. In the course of this investigation, I have come to know Arlene Harris, an Oakridge resident. Harris has advised me that she is involved in the use of drugs and has identified numerous other people in the Oakridge area involved with controlled substances. Harris is not aware of this investigation or of my true identity as an Oakridge police officer.

> "On April 2, 1988, I went with Arlene Harris to the [Oakridge] residence of Gerry and Tami Lundbom * * *. Harris previously advised me that Gerry Lundbom was a supplier of cocaine. Upon arriving at the residence, I met with Gerry Lundbom and arranged to purchase 1/16th ounce of cocaine. I gave Gerry Lundbom $130.00. Later that same date, I returned to Lundbom's residence to pickup [sic] the cocaine.

> "During the course of this transaction, Harris advised me that [defendant] Jim Devereaux was a supplier of cocaine to number [sic] of Oakridge area residents. While at Lundbom's residence during the initial arrangement for the purchase,

Lundbom stated he would get the cocaine from 'Jim, up on the hill.' He then got his telephone and placed it on the coffee table in front of me. I observed him dial 782-3284. Apparently someone answered and I heard Lundbom say, 'Jim, do you have a sixteenth I can get from you.' After a reply, I heard Lundbom say, 'Okay, I'll see you in a little bit.' Lundbom hung up the phone and told me he could get the cocaine.

"Subsequent to the April 2, 1988 cocaine transaction with Gerry Lundbom, I looked up Devereaux's phone number in the Oakridge phone directory. I noted that 782-3284 is listed to J.R. Devereaux, Jr., 49671 Huckleberry Rd. I also noted this residence address is located up a hill from Oakridge. Arlene Harris told me that Jim Devereaux is the 'guy up on the hill.'

"On April 7, 1988, I again purchased cocaine from Gerry Lundbom at his residence. * * * On this occasion, Lundbom indicated that he needed to obtain the cocaine from his local supplier.

"On April 15, 1988, I contacted Gerry Lundbom at his residence for the purpose of buying 1/2 gram of cocaine. I asked him if he got in touch with Jim. He said he hadn't yet but that it would only take a phone call. He then made a phone call. I heard Lundbom state, 'Jim, I'm coming up, bye.' He then hung up. I told Lundbom that he could take his cut out and I'd be back to pick the cocaine up later. He said that '. . . Jim would probably give him a couple of lines while he was up there.'

"Prior to leaving, I asked Lundbom to ask Jim if he would have an ounce of cocaine for me this Friday. I had more conversation with Lundbom about Jim and he indicated he would ask Jim how much the cocaine would cost. When I returned to the Lundbom's residence about one hour later, he gave me the cocaine and told me that Jim said one ounce of coke would cost $1800."

Defendant argues that, although he was identified by name in the affidavit, the warrant was defective, because it directed the officers to search defendant's residence and "its occupants" without identifying defendant by name in the warrant. The state argues that, because the affidavit named defendant and showed that he was an occupant of the residence to be searched, the warrant complied with ORS 133.565(2)(b).

In *State v. Gardner,* defendant appeals from a conviction for unlawful possession of a controlled substance. ORS 475.992(4)(b). She assigns as error the failure of the trial court to grant her motion to suppress evidence seized pursuant to a search warrant. The warrant directed the officers to search defendant's residence and "all persons found on the premises." The affidavit on which the issuing court relied named only defendant and one other person. Defendant argues that the quoted language does not comply with either ORS 133.565(2)(b) or Article I, section 9, which require that a person to be searched be described with particularity. The state responds that the warrant was sufficiently particular to inform the officers serving the warrant as to what persons the issuing court had authorized them to search.

■ ORS 133.565(2)(b) provides:

"(2) The warrant shall state, or describe with particularity:

"* * * * *

"(b) The name of the person to be searched, or the location and designation of the premises or places to be searched."

Moreover, Article I, section 9, of the Oregon Constitution provides, in relevant part:

"[N]o warrant shall issue but upon probable cause * * * and particularly describing the place to be searched, and the person or thing to be seized."

In the absence of legislative history to the contrary, we hold that ORS 133.565(2)(b) and Article I, section 9, provide an identical standard of "particularity," based on a policy of prohibiting general warrants.[1]

In *State v. Blackburn/Barber,* 266 Or 28, 511 P2d 381 (1973), the Supreme Court noted:

---

[1] ORS 133.565 was enacted as part of the 1973 Oregon Criminal Procedure Code, which was the legislature's attempt to update and codify existing criminal procedure law. Commentary, *Proposed Oregon Criminal Procedure Code* XXXII (1972); *see also* Minutes, Senate Committee on Judiciary (Feb. 5, 1973—written statement of Chapin Milbank). ORS 133.565 is in part based on *former* ORS 141.080, which set forth the required form of a search warrant. Commentary, *supra,* at 75. Nothing in the legislative history suggests that the word "particularity" used in ORS 133.565(2)(b) has a different meaning than in Article I, section 9.

> "Both the Fourth Amendment to the United States Constitution and Article I, § 9, of the Oregon Constitution require a search warrant 'particularly describing the place to be searched.' It has been explained that 'the historical motivation for this constitutional mandate was a fear of "general warrants," giving the bearer an unlimited authority to search and seize.' More specifically, the aim of the requirement of particularity is to protect the citizen's interest in freedom from governmental intrusion through the invasion of his privacy. If the search warrant describes premises in such a way that it makes possible the invasion of this interest in privacy without the foundation of probable cause for the search, the warrant is too broad and therefore constitutionally defective.

> "In testing a warrant for definiteness 'it is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain the identity of the place intended.' The description must be sufficiently clear so that the property to be searched is recognizable from other neighboring properties. If, however, a warrant purporting to authorize a search is sufficiently ambiguous that it is impossible to identify with a reasonable degree of certainty the particular premises authorized to be searched, the warrant may not be executed and any search pursuant to it is illegal, whether of the premises actually intended or not, because of the danger that the privacy of unauthorized premises will be invaded." 266 Or at 34-35. (Footnotes omitted.)

We see no difference in application between the search of places and persons.

The purported defect in these warrants is not that the executing officer cannot tell from the face of the warrant whom he is to search; rather, the question is whether the description on the face of each warrant is so general that it authorizes the search of individuals for whom no probable cause to search exists. Professor LaFave states:

> "[T]he individual to be searched must be described with such particularity that he may be identified with reasonable certainty. The person's name, if known, should be set forth, but a name is not essential in all cases. Description of the individual by an alias, family relationship to another named person or even as 'John Doe' will suffice when other facts, such as physical description and location are also included.

> "* * * * *

> "One form of warrant which has been challenged with some

frequency directs a search for particularly described items within a particularly described home, apartment, store, or vehicle, including 'any and all persons found therein.' While some courts have condemned this form of warrant as a 'general or blanket' search warrant which would authorize the indiscriminate search of a large number of people without naming or describing any of them,' this characterization is not justified in all cases[.]

"* * * * *

"A search warrant authorization to search all persons found within a specifically described place is not lacking in particularity in the sense that the executing officer will be unable readily to determine to whom the warrant applies. Rather, the question is whether there is sufficient particularity in the probable cause sense, that is, whether the information supplied the magistrate supports the conclusion that it is probable anyone in the described place when the warrant is executed is involved in the criminal activity in such a way as to have evidence thereof on his person. If the evidence tendered to the magistrate supports such a conclusion, then the search-all-persons-present warrant is unobjectionable. If the evidence does not support such a conclusion, then the searches of those present find no justification in the search warrant." 2 LaFave, *Search and Seizure* § 4.5(e), 228-31 (2nd ed 1987). (Citations omitted.)

Contrary to the dissenting opinions, we think it is legally sufficient that a warrant describe a general category of persons, if there is probable cause. We do not believe that the legislature or the framers of the Constitution intended to prohibit searches of individuals for whom probable cause to search exists, but who, because of the circumstances, could not be described by name or personalized descriptions. For instance, probable cause would exist where an affiant reported that a party was in progress and all the participants were using controlled substances, even though he was unable to name or give personal descriptions of those present. However, if the person to be searched is named or described with particularity in the supporting affidavit, the warrant must contain a similar description to comply with ORS 133.565(2)(b) and Article I, section 9. Moreover, because the risk is great that an innocent person may be swept up in a search under a warrant that authorizes a search of all persons on the premises, the issuing magistrate should review the supporting affidavit for probable

cause with strict scrutiny. The affidavit must indicate with particularity why probable cause exists for the search of those generally described. *See People v. Nieves,* 36 NY2d 396, 369 NYS2d 50, 330 NE2d 26 (1975).

We apply those principles to each of the consolidated cases to illustrate their operation.

■ *State v. Ingram:* The warrant authorized a search of Sink's mobile home and

> "[a]ll individuals and occupants found to be frequenting said premises and all vehicles determined to be associated with the occupants of said premises."

Defendant argues that the warrant directs the police to search only those persons who "frequent" Sink's residence, *i.e.,* those who are present there more than once. Warrants should be read in a realistic and common sense manner. *State v. Villagran,* 294 Or 404, 415, 657 P2d 1223 (1983). We do not understand how the magistrate could have intended that the officers search only those whom they know to have been present on the premises more than once, given the statement in the affidavit that five to seven thousand dollars a week in drug transactions involving many persons occurred on the premises. We interpret the face of the warrant to authorize the search of those persons who could be charged with a violation of ORS 167.222(1).[2]

Although Nelson's affidavit does not specifically describe defendant, it does describe a mobile home where controlled substances are stored and in which several individuals had been involved in continuous drug selling activity over the course of several months. Defendant was found alone inside the mobile home holding a piece of paper that indicated that he had been taking telephone messages. In the light of those facts, we hold that he fits the description of the class of people that were authorized to be searched by the warrant. *See Commonwealth v. Smith,* 370 Mass 335, 348 NE2d 101, *cert den* 429

---

[2] ORS 167.222(1) provides:

"A person commits the offense of frequenting a place where controlled substances are used if the person keeps, maintains, frequents, or remains at a place, while knowingly permitting persons to use controlled substances in such place or to keep or sell them in violation of ORS 475.005 to 475.285, 475.295 and 475.940 to 475.995."

US 944 (1976). The language in the warrant meets the requirements of ORS 133.565(2)(b) and Article I, section 9, and the trial court properly denied defendant's motion to exclude the evidence.

■ *State v. Devereaux:* The warrant directed the officers to search defendant's residence and "its occupants." Whether the affidavit established probable cause to search all "occupants" of defendant's residence is immaterial. "Occupants" is not a particular description of defendant, in the light of the fact that he was named in the affidavit. As a result, the warrant violates ORS 133.565(2)(b) and Article I, section 9. The trial court correctly granted defendant's motion to suppress items seized from defendant's person.[3]

■■ The state also challenges the part of the order granting defendant's motion to suppress evidence seized from his residence. An affidavit can establish probable cause to search if it would "lead a reasonable person to believe that seizable things will probably be found in the location to be searched." *State v. Anspach,* 298 Or 375, 380-81, 692 P2d 602 (1984); *State v. McBride,* 96 Or App 268, 276, 773 P2d 379, *rev den* 308 Or 184 (1989). Sufficiency of an affidavit depends, not only on the facts expressly asserted, but also on the reasonable inferences that can be drawn from those facts. *State v. Anspach, supra,* 298 Or at 381; *State v. Howell,* 93 Or App 551, 557, 763 P2d 179 (1988), *rev den* 307 Or 405 (1989).

■ The affidavit established probable cause to search defendant's residence. The issuing magistrate could have properly inferred that evidence of unlawful possession and delivery of a controlled substance would be found at the residence from the fact that the supplier could be contacted at that residence by prospective purchasers. *See State v. Anspach, supra,* 298 Or at 381; *State v. Villagran, supra,* 294 Or at 408; *State v. Howell, supra,* 93 Or App at 557. Further, the affidavit showed a continuing course of conduct from April 2 to April 15, and its information was not stale on April 22. *See State v. Wilson/Helms,* 83 Or App 616, 623, 733 P2d 54, *rev den*

---

[3] Because we hold that ORS 133.565(2)(b) and Article I, section 9, impose identical standards, we do not reach the state's argument that a violation of ORS 133.565(2)(b) is not of constitutional proportions. *See State v. Davis,* 295 Or 227, 236, 666 P2d 802 (1983).

303 Or 172 (1987). The trial court erred in granting defendant's motion to suppress items seized from the residence.[4]

■ *State v. Gardner:* The warrant directed the officer to search defendant's residence and "all persons found on the premises," even though defendant was named in the affidavit. The warrant violates ORS 133.565(2)(b) and Article I, section 9, because "all persons found on the premises" is not a particular description of defendant.

However, the record is not clear as to whether the seized evidence was found on defendant's person, within the residence or both. If evidence that led to defendant's arrest was seized from the residence, and if the subsequent search of defendant was incident to her arrest, the search was lawful. We vacate defendant's conviction and remand for further findings. If the trial court finds that the state introduced no evidence seized as a result of the search of defendant, or that the introduction of that evidence was harmless, the court shall re-enter the judgment of conviction; otherwise it shall grant a new trial.

*State v. Ingram:* affirmed; *State v. Devereaux:* order reversed with respect to suppression of evidence seized from defendant's residence; otherwise affirmed; *State v. Gardner:* judgment vacated and remanded for further proceedings not inconsistent with this opinion.

**RICHARDSON, J.,** concurring in part; dissenting in part.

The issue common to the three cases consolidated on appeal is whether each search warrant satisfies statutory or constitutional particularity requirements in its designation of the persons to be searched. There are essentially two questions in this inquiry: first, whether the warrant description is sufficient for the executing police officer to identify the persons whom the magistrate intended to be searched; and, second, whether there is probable cause to search the persons whom the magistrate described in the warrants.

---

[4] The fact that the search of defendant was unauthorized does not invalidate the authorized search of the residence. *See State v. Blackburn/Barber, supra,* 266 Or at 36-37.

In testing whether a warrant is sufficiently particular, the first issue is whether it is adequate from the standpoint of the officer executing it. In essence, the question is whether the warrant is a sufficient "road map" to direct the officer to the place or person that the magistrate intended to be searched. The road map is sufficient, at least in a constitutional sense, if the description is such that the officer can with reasonable effort ascertain the person or place to be searched. If the warrant is so ambiguous that the person to be searched cannot be identified with reasonable certainty, it may not be executed, and any evidence obtained will not be lawfully seized. *State v. Blackburn/Barber*, 266 Or 28, 511 P2d 381 (1973). That is so, even if the issuing magistrate found probable cause to search the person or place that was actually searched. The vice of a warrant that is not a good road map is the risk that the officer, in resolving the ambiguous directions, may invade privacy interests not intended by the magistrate to be invaded or not dictated by probable cause to be invaded.

The constitutional requirement of definiteness in a warrant's description is the product of the historical fear of general warrants. *See State v. Blackburn/Barber, supra.* However, an adequate road map is only one method of quelling the fear of general warrants; the principal method is the requirement for an affidavit showing probable cause to believe that evidence will be found in the places described. The definiteness of the directions to the executing officer is only tangentially related to the magistrate's job of issuing a constitutional warrant and the analysis is different.

For example, if a warrant commanded the search of all students present at South Salem High School on a certain day, the warrant is sufficiently particular. The officer would have directions to be able to locate the persons to be searched. The status of being a student and the presence at a designated place on a particular day become the descriptive facts that satisfy the requirements of particularity. The officer is not left to his own devices in finding the persons to be searched. There is probably no inherent defect in the warrant just because it describes a large class of persons.

If the warrant is a sufficient directive to the officer, it may nevertheless be defective because the magistrate has not followed statutory or constitutional directives. In the context

of my example, the issue is whether there was probable cause to believe that a search of any student selected would disclose evidence of a crime described in the warrant application. In all probability, it would not be possible to establish that all students would be involved in the criminal activity being investigated and that every student searched would probably have evidence on his person. We could then say that, as a matter of law, the warrant is too broad or, in constitutional parlance, is not or cannot be made sufficiently particular.

Beyond the obvious cases, whether the warrant is too broad from the magistrate's perspective depends on the facts presented in the application for the warrant. As the location and the population to be searched becomes more limited, the likelihood that every person present is a party to the offense and probably is secreting evidence becomes more plausible. It then becomes a matter of determining if the submission establishes probable cause to believe that the police will find evidence on the persons designated.

In short, a warrant commanding the search of all persons in a specific place is not lacking in particularity in the sense that the executing officer will be unable readily to determine to whom the warrant applies. Rather, the question is whether there is particularity in the probable cause sense; that is, whether the facts support a conclusion that it is probable that everyone in the described location at a particular time is involved in the criminal activity in such a way as to have evidence on his person.

Applying this analysis to a challenge of a warrant depends, in large measure, on the particulars of the challenge. If a defendant does not challenge the sufficiency of the affidavit to support the warrant, but only the facial particularity, we will be limited to deciding if the *warrant* is sufficient road map on its face, unless no factual predicate could be laid for the warrant, as a matter of law.

In each of the cases on review, the defendant, in addition to the constitutional challenge, has argued that the warrant does not comply with ORS 133.565:

"(2) The warrant shall state, or describe with particularity:

"* * * * *

"(b) The name of the person to be searched, or the location and designation of the premises or places to be searched."

I agree with the majority that the statute defines the authority of an officer to search and implements a constitutional right and, thus, that a statutory violation requires suppression of the evidence. I also agree with the constitutional analysis that a warrant directing the search of an unnamed person or a class of persons is not defective on its face. However, I do not agree that the state and federal *constitutional* requirements of particularity are identical to those expressed in ORS 133.565.

However flexible the state and federal constitutions may be in terms of probable cause and particularity, the statute need not be, and is not, as flexible. We cannot, on the one hand, hold that the statute guarantees a constitutional right and, on the other hand, ignore the statute's words. Although there is some room for doubt as to what the legislature meant, there is scant room for creative construction of the requirement that the warrant "shall state, or describe with particularity: * *,* the name of the person to be searched." Those words are more precise and limiting than the comparable phrases of Article I, section 9, and the Fourth Amendment. I interpret the statute to require that the name of the individual be included *or* that the individual be described with sufficient particularity that the executing officer can locate that individual. Unlike the constitution, the statute requires that the warrant relate to a particular individual. It does not allow a description, however precise, that is of a class of individuals only determinable by facts which exist at the time the warrant is executed. For example, a warrant ordering the search of all persons present in the described residence would be constitutionally sufficient but would not meet the statutory requirement, because no particular person is named or described.

It could be that there is implicit in ORS 133.565(2) a limitation that a warrant to search persons cannot be issued unless the magistrate can describe a particular individual that there is probable cause to believe will have evidence on his person. That effectively prevents issuance of warrants to search unknown persons. I can agree with the implicit conclusion of the majority that reading the statute as I do would unnecessarily limit otherwise constitutional searches. In many instances, there is probable cause to believe that a group

or class of persons are secreting evidence on their persons, but whose identity is unknown when the warrant is issued. The legislature is free to limit warrants more narrowly than the state or federal constitutions do.

I will now apply the above principles to each of the consolidated cases to illustrate their operation.

In *State v. Ingram,* the warrant commanded a search of a described residence and

"[a]ll individuals and occupants found to be frequenting said premises and all vehicles determined to be associated with the occupants of said premises."

Defendant argues that the search of his person exceeded the scope of the warrant, because he was not a person or occupant who was frequenting the premises. The trial court found that there was no basis for the officer to believe that defendant was a person frequenting the place, but that the officer reasonably believed that defendant was an occupant of the premises. The majority concludes that defendant was properly searched, because he could have been charged with frequenting a place where drugs are used in violation of ORS 167.222(1). Consequently, he fitted the description in the warrant. Both interpretations of the warrant's descriptions are reasonable, and the facts known to the officer at the time of the search supported a search of defendant as a person described.

Defendant's next challenge to the warrant appears to be twofold: first, because he was not named in the warrant it violated ORS 133.565(2)(b); and, second, aside from the statute, there was not specificity sufficient to satisfy the particularity requirement of the state or federal constitutions. The warrant was sufficient to satisfy the constitutions. It was a specific road map for the officer, and the affidavit established probable cause to believe that all occupants or persons frequenting the premises would be involved in the extensive narcotics trade being conducted there. However, the warrant does not comply with the statute. It does not name defendant or even purport to describe a particular individual person to be searched. In that light, the warrant was invalid, insofar as it commanded the search of persons or occupants.

The narcotics that were the basis of the charge were

seized from defendant's pickup that was parked near the residence. The drugs found on his person were not offered as evidence. The trial court found:

> "The executing officers could not reasonably have concluded that defendant's vehicle was associated with the defendant if they had not first conducted the search of the defendant and discovered the key to the vehicle, which led to their inquiry whether the key was to defendant's vehicle and their assertion of authority to search vehicles."

Defendant does not make any argument about the search of his vehicle and does not explicitly contend that an unlawful search of his person makes the search of his pickup unlawful. In the light of the trial court's analysis, and viewing defendant's brief charitably, a possible argument is that the police exploited the illegally obtained information—defendant's vehicle keys and his statement—to search the pickup, and so the drugs found should be suppressed. The warrant gave authority for the officer to search the vehicle independently of the authority to search persons. However, in order to determine if the vehicle was described in the warrant, the officer had to determine that it was associated with an occupant of the premises. As the trial court found, that information was obtained from the search of defendant. The trial court concluded that that search of defendant was lawful and, consequently, that the evidence from the pickup was legally seized.

We are not assisted by the state's brief because it does not mention the search of the vehicle or discuss a basis for upholding that search if the search of defendant is deemed unlawful. For example, the state does not argue that the search of defendant was authorized as incident to his arrest or on some basis apart from the warrant. I would conclude that the search of defendant's vehicle was unlawful and that the court erred by denying the motion to suppress.

In *State v. Devereaux,* the warrant commanded the officers to search a particularly described residence and "its occupants." The trial court allowed defendant's motion to suppress, on the ground, *inter alia,* that defendant, who was searched, was not named in the warrant as required by ORS 133.565(2)(b). The majority concludes that the warrant is deficient, because " '[o]ccupants' is not a particular description of defendant, in the light of the fact that he was named in

the affidavit and, as a result, the warrant violates ORS 133.565(2)(b) and Article I, section 9." 104 Or App at 401. The essence of that conclusion is that the warrant must be as descriptive as is made possible by the information available to the magistrate. If the name of the person is known, it must be included. Conversely, if the name is not known or if a particular individual is not contemplated, then the statute allows a less particular description or a description of unknown persons. As I have indicated, I do not agree with that interpretation. The search of defendant's person pursuant to the warrant was unlawful, because the warrant did not purport to describe a particular person. I agree, for that reason, that the evidence seized from his person was properly suppressed. I also agree that the trial court erred by suppressing evidence seized from the residence. The parts of the warrant are separable, and the fact that the command to search the person is defective does not invalidate the other commands of the warrant.

In *State v. Gardner,* the warrant directed the officers to search defendant's residence and "all persons found on the premises." It suffers from the same statutory vice as the warrants in *Ingram* and *Devereaux*: It does not relate to a particular person, as ORS 133.565(2)(b) requires. The majority is correct that, if the evidence that the state offered was obtained from the residence and not from defendant's person, then the conviction should be affirmed. On the other hand, any evidence obtained by a search of defendant's person pursuant to the warrant would have to be suppressed, because the warrant is unlawful under ORS 133.565(2)(b).

Joseph, Chief Judge, and Buttler and Newman, JJ., join in this opinion.

**NEWMAN, J.,** concurring in part; dissenting in part.

I concur in the concurring and dissenting opinion of Richardson, J., and the results he reaches, but I would hold that the particularity requirements of both ORS 133.565(2)(b) and of Article I, section 9, were violated. Accordingly, in *State v. Ingram,* although I agree with Richardson, J., that the warrant does not comply with ORS 133.565(2)(b), I would also hold that it does not comply with Article I, section 9. In *State v. Devereaux,* I agree with Richardson, J., that the search of

defendant's person pursuant to the warrant was unlawful, because the warrant did not purport to describe a particular person, but I would also hold that, for the same reason, it violates the particularity requirements of Article I, section 9. In *State v. Gardner,* I agree with Richardson, J., that the warrant suffers from the same statutory vice as the warrants in *Ingram* and *Devereaux,* but I would also hold that it violates the particularity requirements of Article I, section 9.