Argued and submitted August 29, 1990, resubmitted In Banc January 9, reversed and remanded for new trial April 10, 1991

# STATE OF OREGON,
*Respondent,*

*v.*

# FRED HAROLD DAVIS,
*Appellant.*

## (J88-3030; CA A62666)

809 P2d 125

Charles F. Lee, Roseburg, argued the cause for appellant. With him on the brief was Parsons & Lee, Ltd., Roseburg.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

EDMONDS, J.

Warren, J., dissenting.

## EDMONDS, J.

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992(4). He assigns error to the denial of his motion to suppress evidence seized pursuant to a search warrant. We reverse.

Officer Brown had a house at 1877 S.E. Main Street under surveillance and sought a search warrant to search it. In his affidavit in support of the warrant, he mistakenly identified the house number as 1837 S.E. Main Street.[1] The warrant described the premises to be searched as:

> "A green single story house located at 1837 SE Main Street, Roseburg, Oregon, inclusive of any persons or vehicles located thereon."

The warrant did not refer to the affidavit or any attachments and it gave authority to search to "any police officer of Douglas County." Brown executed the warrant by searching the house at 1877 S.E. Main Street.

Defendant argues that the warrant authorized a search for a house different than the one searched and, therefore, the search of the house at 1877 S.E. Main Street was unauthorized. *See* ORS 133.585.[2] The state argues that the erroneous address in the search warrant did not render the description of the premises constitutionally defective, because the officer who executed the warrant was also the affiant on

---

[1] Although the affidavit refers to the same mistaken address as the warrant, it contains a more detailed description of the house:

> "a single story green house located on the North East corner of SE Main and Marsters Street. It has an attached carport/garage and a large gravel and dirt parking area on the West side where Kading and her visitors park their vehicles."

The description of the house in the affidavit does not match the physical features of the house at 1837 S.E. Main Street. In denying the motion to suppress, the trial court relied on *Mercer v. State,* 63 Or App 437, 664 P2d 429 (1983), and referred to the language on the face of the warrant and the description in the affidavit to clarify any ambiguity. In *Mercer,* we reviewed the warrant and its attachments to determine whether the description was particular enough under ORS 133.565(2)(b) to enable an executing officer to distinguish the property to be searched from other neighboring property. Here, the warrant has no attachments nor does it incorporate the affidavit by reference. Accordingly, we look only to the warrant to describe the premises to be searched.

[2] ORS 133.585 provides, in part:

> "The scope of search shall be only such as is authorized by the warrant and is reasonably necessary to discover the persons or things specified therein."

whose affidavit the warrant was based, and he had personal knowledge of the premises for which he sought authorization to search. It relies on *State v. Blackburn/Barber,* 266 Or 28, 511 P2d 381 (1973), and *State v. Cole,* 84 Or App 497, 734 P2d 393 (1987).

In *State v. Blackburn/Barber, supra,* a search warrant described the premises to be searched as "apartment 2 in the basement" of a specified residence, "said apartment having the letters ECURB on the door." The affiant who had obtained the warrant was also in charge of executing it. He had obtained his information from an informant who had previously visited the premises and had observed marijuana there. When the warrant was executed, the executing officer observed the number 2 on Blackburn's room, and that room was searched. The police also searched an unnumbered basement apartment that had the letters "ECURB" on its door. The court said:

> "When the officers possessed a warrant which authorized the search of Apartment 2 which had ECURB on the door and there was no such apartment, but there were an Apartment 2 and an unnumbered apartment with ECURB on the door, they could not execute the warrant if real doubt existed as to which was intended. We hold there could be no real doubt as to which of the premises was intended by the warrant and that it could be ascertained with reasonable certainty. No one could have made a mistake or been confused about a word like ECURB, but anyone could easily have made a mistake about a numeral. ECURB was a significant and more unmistakable guide than a mere number.
>
> "* * * * *
>
> "There was no authority to search any part of the premises except the apartment with ECURB on the door. As a result, the evidence against Blackburn which was seized in his Apartment 2 was properly quashed by the trial court * * *." 266 Or at 35.

In *State v. Cole, supra,* a detective obtained a warrant to search premises described as "1560 S.W. Avery Lane, Corvallis." The warrant was based on an affidavit requesting a warrant to search "1560 S.W. Allen Lane, Corvallis." The warrant was executed at 1560 S.W. Allen Street. We said:

> "In this case, the * * * warrant not only gave an address, it also described the house to be searched. Thomig [the affiant

and the executing officer] was familiar with the house. Evidence at the suppression hearing showed that there was little if any likelihood that the house could be confused with neighboring property or that the officers would enter property that they had no authority to enter. We conclude that, with the description of the house, the warrant was sufficiently definite to satisfy the requirements of ORS 133.565(2)(b) and Article I, section 9. *See State v. Blackburn/Barber, supra.* * * *." 84 Or App at 501.

■ In *State v. Ingram,* 104 Or App 389, 802 P2d 656 (1990), we held, under ORS 133.565(2)(b),[3] that, if a warrant describes a general category of persons such as "occupants," the warrant is sufficient if there is probable cause in the affidavit to search all occupants. Conversely, if the person to be searched is described with particularity in the affidavit, the warrant must contain a similar description to comply with the particularity requirements of ORS 133.565(2)(b) and Article I, section 9. In *Ingram,* the defect in the warrants was not that the executing officer could not tell from the face of the warrant whom he was to search. Rather, the question was whether the description on the face of each warrant was so general that it authorized the search of individuals for whom no probable cause to search existed.

Likewise, in this case, the problem is not that the description on the face of the warrant is so ambiguous that the officer could not determine what premises were authorized to be searched. The warrant specifically describes the address to be searched as 1837 S.E. Main Street. However, unlike in *Ingram,* this case does not present the issue of whether the warrant meets the particularity requirements of ORS 133.565(2)(b) and Article I, section 9. Rather, the issue is whether there was authority to search premises other than those described in the warrant, when the officer had personal knowledge of the premises that were intended to be searched.

In *State v. Devine,* 307 Or 341, 768 P2d 913 (1989),

---

[3] ORS 133.565(2) provides, in part:

"The warrant shall state, or describe with particularity:

"* * * * *

"(b) * * * the location and designation of the premises or places to be searched."

the court rejected arguments that the "good faith" or "reasonableness" of the officers in searching an apartment were material to the inquiry. The search warrant authorized the search of a dwelling with the number "442" located on it. When the officers who were executing the warrant arrived at the residence, they discovered an apartment located in a garage behind the house. The garage apartment and the house were not attached. The apartment had the number "442 1/2" over the door. The officers searched the apartment and seized controlled substances. The court said:

> "The arguments of the parties to the Court of Appeals and to this court have turned on factual questions such as whether the police officers executing the warrant saw or should have seen the numbers '442 1/2' above the door of the separate living area. From the answer to this and similar questions, the parties then argue the merits of an 'objective' versus a 'subjective' test of the reasonableness of the officers' actions under Article I, section 9, of the Oregon Constitution. We think both sides miss the point.

> "The officer's 'good faith' or 'reasonableness' had nothing to do with the inquiry. If the defendant's living quarters really were 'separate'—*i.e.*, if defendant really was maintaining a separate household in the space, subject only to the homeowner's right to enter in emergencies—then those separate premises were not covered by the search warrant. This is the clear lesson of cases like *State v. Blackburn/Barber, supra.*

> "* * * * *

> "The warrant in this case authorized only entry into the premises at 442 W. Centennial, a house fully described in the warrant. It did not purport to authorize entry into some other, separately maintained premises, whether inside the house or elsewhere. Absent some justification other than the warrant (and there is no basis in the present record for any other justification), a search of separate premises would have been improper." 307 Or at 345.

The lesson of *Blackburn/Barber* and *Devine* is that the authority of an officer to search premises under a search warrant is wholly circumscribed by the description in the warrant. The warrant requirement is intended to take discretion out of the hands of the police by requiring that determinations of probable cause be made by a neutral, detached magistrate. *See State v. Peller,* 287 Or 255, 261 n 2, 598 P2d 684 (1979). If we were to accept the state's argument, an officer would have

authority to search premises on the basis of his knowledge, even though those premises were not accurately described in either the affidavit or the warrant. As the Supreme Court did in *Devine,* we reject the suggestion that the executing officer's good faith or reasonableness has anything to do with the inquiry. If the officer had gone to the address described in the warrant, he would have discovered the error in the description and could have returned to the magistrate to obtain a different warrant. The officer's independent knowledge cannot cure an erroneous description.

The dissent says:

> "I would hold only that the officer's knowledge *of the contents of the affidavit* is relevant to whether the affidavit was required to have been attached to the warrant.

> "I would uphold the search under the warrant, because the warrant was particular on its face and, although it was latently ambiguous because of an inaccuracy, the affidavit, the contents of which were known to the executing officer, provided objective information establishing for which house the judge found probable cause." 106 Or App at 556. (Emphasis in original.)

The dissent reaches its result by looking at the description in the affidavit, although it acknowledges that there is no evidence in the record to show that the affidavit was attached to the warrant at the time of execution. Moreover, because the warrant was directed to "any police officer of Douglas County," there was no assurance that the affiant would be the executing officer. The officer's knowledge of the contents of the affidavit is irrelevant. The dissent's analysis would allow an officer to search the premises he *meant* to search, rather than restricting the scope of the search to the premises for which a neutral magistrate found probable cause to search.

The dissent also says that the warrant was particular on its face, "although it was latently ambiguous because of an inaccuracy." 106 Or App at 556. In *State v. Blackburn/Barber, supra,* the court said:

> "If, however, a warrant purporting to authorize a search is sufficiently ambiguous that it is impossible to identify with a reasonable degree of certainty the particular premises authorized to be searched, the warrant may not be executed and any search pursuant to it is illegal * * *." 266 Or at 35.

Characterizing the description as "ambiguous" cannot save this warrant. Given the description *in the warrant,* there is *no* possibility that a reader could identify with reasonable certainty that the house at 1877 S.E. Main Street was to be searched.

We hold that the search of the house at 1877 S.E. Main Street was unauthorized, because the warrant gave authority to search only a house at 1837 S.E. Main Street. To the extent that *State v. Cole, supra,* suggests that an officer executing a warrant may rely on his knowledge of the place to be searched, it is overruled. The trial court erred when it denied defendant's motion to suppress.

Reversed and remanded for a new trial.[4]

**WARREN, J.,** dissenting.

The majority frames the issue as "whether there is authority to search premises other than those described in the warrant, when the officer has personal knowledge of the premises that were intended to be searched." 106 Or App at 550. The answer to that is, "No, of course not" with a perfunctory citation to Article I, section 9, of the Oregon Constitution, which prohibits general warrants. That is the majority's opinion in a nutshell.

Now let us discuss the real issue: Did the warrant describe the house that was searched? The warrant described the house to be searched as a "green single story house located at 1837 SE Main Street." That description was sufficiently particular; however, it was not completely accurate: one number in the address was incorrect. It is unrealistic and hypertechnical to hold that a warrant that does not describe a place 100 percent accurately, does not describe it all. The test is whether

> " 'the officer with a search warrant can with reasonable effort ascertain the identity of the place intended.' The description must be sufficiently clear so that the property to be searched is recognizable from other neighboring properties." *State v. Blackburn/Barber,* 266 Or 28, 35, 511 P2d 381 (1973). (Footnotes omitted.)

---

[4] Because of our disposition of the case, we do not reach defendant's remaining assignments of error.

In *Blackburn/Barber,* the description was partially inaccurate, but the Court determined that the officers reasonably could determine which place was intended. The majority quotes that test, but then never applies it.[1] The Court did not hold that the officers had to get a new warrant when they discovered the error, as the majority urges now.

Like *Blackburn/Barber, State v. Cole,* 84 Or App 497, 734 P2d 393 (1987), involved an inaccurate warrant description. The warrant described the house to be searched as 1560 S.W. Avery Lane. The affidavit described it as 1560 S.W. Allen Lane, and police actually searched 1560 S.W. Allen Street. I agree with the majority that to the extent the case says that the officer's subjective knowledge of which house was intended can validate an inadequate warrant description, it is wrong. However, I do not think that is the holding. The case holds that the description was adequate, because the officers could, based on objective criteria, ascertain the place intended. 84 Or App at 501. That was so, because the warrant description was detailed; Avery had no 1500 block and was mostly industrial; and Allen Street was only one of two streets in the area with a house numbered 1560 and the other house did not match the description. The case was decided correctly.

The cases on which the majority relies are inapposite. In *State v. Ingram,* 104 Or App 389, 802 P2d 656 (1990), we held that the description in the warrant of "occupants" did not particularly describe the defendant when he was identified individually in the affidavit. 104 Or App at 401. Here, the house was identified individually in both the warrant and the affidavit. In *State v. Devine,* 307 Or 341, 768 P2d 913 (1989), the issue was whether a warrant authorizing a search of a house also authorized a search of an apartment located in a separate building on the same lot. The Supreme Court held that the warrant authorized only the search of one residence and, if the apartment was a separate residence, its search was not authorized. Here, there is no question but that the two houses were separate residences and the officers could not search both. The question is whether the warrant described the house that was searched.

---

[1] The majority does not assert that *Blackburn/Barber* is no longer valid. It has consistently been cited with approval. *See, e.g., State v. Devine,* 307 Or 341, 768 P2d 913 (1989).

The appropriate test for inaccurate warrant descriptions, as enunciated in *Blackburn/Barber* and followed in *Cole,* is whether an officer can with reasonable effort identify the place intended. *State v. Blackburn/Barber, supra,* 266 Or at 35. I would hold that the officers reasonably could identify the place intended. The warrant described the house as green and numbered 1837. The house numbered 1837 was not green. Thus, an officer who did not know which house was intended immediately would be alerted to a problem. The officer executing the warrant easily could have determined which house was intended by checking the affidavit. It described the house as

> "located on the North East corner of SE Main and Marsters Street. It has an attached carport/garage and a large gravel and dirt parking area on the West side where Kading and her visitors park their vehicles."

The house searched was the only green house on the block. It was located on the northeast corner of S.E. Main and Marsters and was the only house that otherwise fitted the detailed description in the affidavit.

Allowing an officer to consult the affidavit when a warrant description is facially valid but proves ambiguous because of an inaccuracy is consistent with the purposes of constitutional and statutory requirements. *See* Or Const, Art I, § 9; ORS 133.565(2)(b). The warrant requirement takes discretion out of the hands of the police, by requiring that determinations of probable cause be made by a neutral, detached judge. *State v. Peller,* 287 Or 255, 261 n 2, 598 P2d 684 (1979). The requirement that a warrant describe with particularity the place to be searched ensures that police actually search the premises for which the judge found probable cause. *State v. Devine, supra,* 307 Or at 341. A logical way to determine for which premises the judge found probable cause is to examine the affidavit on which the judge relied.

It is not sufficient, however, that the affidavit contain additional facts; there must also be some showing that the information was reasonably accessible to the executing officers. *See* 2 LaFave, *Search and Seizure* 209, § 4.5(a) (2d ed 1987). Some courts in other jurisdictions have required that the affidavit be attached to the warrant when it was executed. *See* LaFave, *supra; see also Annot.,* 11 ALR3d 1330, § 10

(1967). In this case, the record does not show whether the affidavit was attached to the warrant. That is not fatal, however, because the executing officer was also the affiant and, therefore, can be assumed to have been aware of the contents of the affidavit without a showing that he had the affidavit with him. It is not the officer's knowledge of which house he, as affiant, intended to search that is relevant. The majority is right that an officer's knowledge of information that is not in the affidavit cannot be considered. I would hold only that the officer's knowledge *of the contents of the affidavit* is relevant to whether the affidavit was required to have been attached to the warrant.

I would uphold the search under the warrant, because the warrant was particular on its face and, although it was latently ambiguous because of an inaccuracy, the affidavit, the contents of which were known to the executing officer, provided objective information establishing for which house the judge had found probable cause. The majority contends that that analysis would "allow an officer to search the premises he *meant* to search, rather than restricting the scope of the search to the premises for which a neutral magistrate found probable cause." 106 Or App at 552. That is not correct. My point is that an officer in this kind of situation ought to be able to examine the affidavit to determine for which premises the judge found probable cause.

I dissent.

Rossman, Deits and Riggs, JJ., join in this dissent.