Argued and submitted June 12, affirmed October 11, 2000

## STATE OF OREGON,
*Appellant,*

*v.*

## GARY LEON MARTIN,
*Respondent.*

(98CR0101; CA A103003 (Control))

## STATE OF OREGON,
*Appellant,*

*v.*

## VALERIE LYNN DILLS,
aka Valerie Lynn Alto,
*Respondent.*

(98CR0087; CA A103004)
(Cases Consolidated)

12 P3d 548

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

James N. Varner argued the cause for respondents. With him on the brief was David E. Groom, State Public Defender.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

**HASELTON, J.**

The state appeals, in two consolidated cases, assigning error to the trial court's suppression of evidence seized upon execution of a "telephonic search warrant." ORS 133.555(3). The state contends that various defects in the warrant process, including the overbreadth of the "duplicate original" warrant, were immaterial and, in all events, were not of constitutional magnitude and thus did not require suppression. *See* ORS 136.432.[1] We conclude that the scope of the "duplicate original" warrant deviated so substantially from the magistrate's oral authorization to search that the execution of the latter violated Article I, section 9, of the Oregon Constitution. Accordingly, we affirm.

Except as specifically noted, the material facts are undisputed. On January 27, 1998, Detective Gardiner of the Curry County Sheriff's Office telephoned Circuit Court Judge Downer to request a telephonic search warrant pursuant to ORS 133.555(3).[2] Detective Gardiner was in Brookings, and Judge Downer was in Gold Beach at the time. Gardiner sought authorization to search Apartment No. 5 at 524 Spruce Street in Brookings for controlled substances, including methamphetamine, and related paraphernalia, documents, and proceeds. He recounted to the judge the facts that he believed constituted probable cause for the search. Gardiner's statements were tape-recorded as required under the telephonic warrant statutes, ORS 133.545(5), but Judge Downer's comments were not recorded.[3] At the end of the

---

[1] ORS 136.432 provides, in part:

"A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

"(1) The United States Constitution or the Oregon Constitution[.]"

[2] The telephonic search warrant process is described more fully below and the pertinent statutes are set out in that discussion. *See* 170 Or App at 371-72.

[3] The tape recording concludes with the following colloquy:

"GARDINER: * * * I'd also be looking for any quantities of cash greater than $100 which would be consistent with the sale and manufacture—resale and manufacture of methamphetamine.

"(pause)

"GARDINER: Yes.

"(pause)

conversation, Judge Downer orally authorized a search of 524 Spruce Street, Apartment No. 5.[4]

Judge Downer did not sign, date, and file an original search warrant following the conversation, as required by ORS 133.555(3).[5] However, Gardiner did prepare a "duplicate original warrant," signing Judge Downer's name to that document. ORS 133.555(3). That duplicate original warrant authorized "any police officer in the state of Oregon" to search "524 SPRUCE STREET, BROOKINGS, CURRY COUNTY, OREGON." The building located at 524 Spruce Street in Bookings is a multi-unit apartment complex. The duplicate original warrant did not refer to Apartment No. 5.

The search warrant was then executed, with Gardiner "as the officer in charge of that operation." Only Apartment No. 5 was searched. Defendants, who resided in Apartment No. 5, were subsequently charged with a variety of crimes, including drug offenses.

Defendants moved to suppress, arguing principally that, because the duplicate original warrant described the entire apartment complex, and not Apartment No. 5, the warrant was impermissibly overbroad. *See, e.g., State v. Davis*, 106 Or App 546, 552, 809 P2d 125 (1991) (applying particularity requirement); *State v. Ingram*, 313 Or 139, 831 P2d 674 (1992) (prohibiting general warrants); *State v. Willcutt*, 19 Or App 93, 95, 526 P2d 607, *rev den* (1974) (stating rule that search warrant must specify which subunits of multi-unit structure are to be searched). In the hearing on

---

"* * * * *

"GARDINER:  524 Spruce, No. 5.

"(pause)

"GARDINER:  Thank you, Your Honor. Do you want me to go ahead and turn the tape off?

"(pause)

"GARDINER:  Great. Thank you."

[4] As described below, the trial court, in ruling on the motion to suppress, expressly found that Judge Downer orally authorized a search of Apartment No. 5. Defendant argues that that finding, based on a one-sided recording, is impermissible speculation. Given our disposition, we need not resolve that matter.

[5] Judge Downer did, however, subsequently certify the accuracy of the transcription of the tape recording in accordance with ORS 133.545(5).

that motion, the state did not dispute that the duplicate original warrant's description of the premises was impermissibly overbroad. Instead, the state argued that that facial overbreadth should be qualified by the officer's subjective knowledge and good faith—and specifically in the telephonic warrant context, that the "lack of particularity" or "overbreadth" analysis should focus not on the duplicate original warrant but, rather, on the *magistrate's* original authorization:

> "[The duplicate original warrant is] a dummied up piece of paper. The actual truth of what's said is in the transcript of the telephone conversation.
>
> "* * * * *
>
> "And at the end of the affidavit, obviously, [Gardiner] repeats the address, 524 Spruce, Number 5. At that point the Detective receives permission from the judge to go and search that residence.
>
> "I think in the case of telephonic search, there's no question that it's going to go to another officer. You're going to have the officer who made the telephonic search warrant be the officer who goes and serves that search warrant."

The court then found that Judge Downer did in fact authorize a search of Apartment No. 5:

> "I would find based upon the one-sided dialogue * * * that Officer Gardiner was requesting a warrant for 524 Spruce, Number 5 and that Judge Downer authorized a search of 524 Spruce No. 5.
>
> "He would have therefore authorized Officer Gardiner to prepare a search warrant for service upon the occupants of 524 Spruce Street, No. 5 in Brookings."

Nevertheless, the court also found the duplicate warrant to be overbroad:

> "Without the No. 5 there, technically the warrant that was signed under the authority of Judge Downer by Officer Gardiner gave him the authority to go in all five buildings. And we all know you can't do that."

Accordingly, the court granted the motion to suppress.

On appeal, the state makes two closely related arguments. First, any ostensible overbreadth in the duplicate

original warrant's description of the premises is cured by reference to the magistrate's more precise oral authorization. Second, in all events, the operative warrant here was not the duplicate original but was, instead, the magistrate's oral authorization. The state further asserts—in response to defendant's contention that the procedure followed here deviated from that prescribed in ORS 133.545(5) and ORS 133.555(3)—that suppression cannot be based on such statutory violations.

■  We begin with a brief description of the telephonic warrant procedure. ORS 133.545(5) allows a recorded oral statement to substitute for a written affidavit when a police officer applies for a search warrant over the telephone:

> "Instead of the written affidavit * * *, the judge may take an oral statement under oath. The oral statement shall be recorded and transcribed. The transcribed statement shall be considered to be an affidavit for the purposes of this section. In such cases, the recording of the sworn oral statement and the transcribed statement shall be certified by the judge receiving it and shall be retained as a part of the record of proceedings for the issuance of the warrant."

ORS 133.555(3) sets forth the procedures for issuance of a telephonic warrant:

> "The judge may orally authorize a police officer or a district attorney to sign the judge's name on a duplicate original warrant. A duplicate original warrant shall be a search warrant for the purposes of [this chapter] * * *. In such cases a judge shall enter on the face of the original warrant the exact time of the issuance of the warrant and shall sign and file the original warrant in the manner provided by law."

Thus, under ORS 133.555(3), the issuing magistrate must create and file an original warrant contemporaneously with the oral authorization or soon thereafter. *State v. Jordan*, 73 Or App 84, 89, 697 P2d 1004, *rev den* 299 Or 251 (1985). That provides a means for the suppression court to compare the officer's duplicate with the judge's original in order to "to verify, for example that the officers did not add items not approved by the magistrate." *State v. Evans*, 110 Or App 46,

54, 822 P2d 1198 (1991). That process thus ensures that "evidence [is] gathered [in] a constitutionally permissible" fashion. *Id.*

Finally—and of particular importance here—telephonic warrants are subject to the requirements generally applicable to all warrants, including the "particularity" requirement of ORS 133.565(2), which provides in part that "the warrant shall state, or describe with particularity * * * the location and designation of the premises or places to be searched."

■    Here, there were at least three violations of the statutorily prescribed process. First, the court never signed, dated, and filed a written original warrant, as required by ORS 133.555(3).[6]

■    Second, the duplicate original warrant—which under ORS 133.555(3) is deemed to be "a search warrant for purposes of [this chapter]"—did not, on its face, meet the particularity requirement of ORS 133.565(2)(b).

■■    Finally, the duplicate original warrant's description of the premises violated an implicit, but essential, statutory requirement. That description not only was facially overbroad, but it also deviated materially from the issuing magistrate's underlying authorization. It broadened the authorized scope of the search from one apartment to include the entire complex. If the statutory scheme is to operate practically and legally, officers, in creating a *duplicate* original warrant, must accurately memorialize the material elements of the court's order. *See Evans*, 110 Or App at 54; *Jordan*, 73 Or App at 89. That did not occur here.

---

[6] Although ORS 133.555(3) does not explicitly refer to a "written" document, its references to "enter on the face," "sign" and "file" permit no other plausible construction. *Cf. Evans*, 110 Or App at 55 n 4:

"ORS 133.555(3) is based on California Penal Code § 1528 (1970). In construing that section, the California Court of Appeal observed: 'An "oral" procedure * * * is permitted by statute only as to the affidavit in support of a search warrant: the Legislature has made no equivalent provision permitting "oral" issuance of the warrant itself.' " (Citations omitted.)

Nevertheless, as the state asserts, under ORS 136.432, mere statutory violations do not warrant suppression. Thus, the issue reduces to whether any of those violations also offends Article I, section 9, of the Oregon Constitution.

The state acknowledges, necessarily, that a warrant's lack of particularity may violate not only ORS 133.565 but also Article I, section 9. "ORS 133.565(2) implements a constitutional right to be free from searches conducted pursuant to warrants that do not particularly describe the persons or places to be searched." *Ingram*, 313 Or at 147. In *State v. Blackburn/Barber*, 266 Or 28, 34-35, 511 P2d 381 (1973), the court described the constitutional implications of overbroad warrants:

> "Both the Fourth Amendment to the United States Constitution and Article I, § 9, of the Oregon Constitution require a search warrant 'particularly describing the place to be searched.' It has been explained that 'the historical motivation for this constitutional mandate was a fear of "general warrants," giving the bearer an unlimited authority to search and seize.' More specifically, the aim of the requirement of particularity is to protect the citizen's interest in freedom from governmental intrusion through the invasion of his privacy. If the search warrant describes premises in such a way that it makes possible the invasion of this interest in privacy without the foundation of probable cause for the search, the warrant is too broad and therefore constitutionally defective.

> "In testing a warrant for definiteness 'it is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain the identity of the place intended.' The description must be sufficiently clear so that the property to be searched is recognizable from other neighboring properties. If, however, a warrant purporting to authorize a search is sufficiently ambiguous that it is impossible to identify with a reasonable degree of certainty the particular premises authorized to be searched, the warrant may not be executed and any search pursuant to it is illegal, whether of the premises actually intended or not, because of the danger that the privacy of unauthorized premises will be invaded."

*See also State v. Devine*, 307 Or 341, 343-44, 768 P2d 913 (1989) ("The purpose of this [Article I, section 9, particularity] requirement is to minimize the risk of intrusion into premises other than those as to which a magistrate has found probable cause to search."); *State v. Cortman*, 251 Or 566, 569, 446 P2d 681, (1968) ("The purpose of the particular-description requirement is to narrow the scope of the search to those premises for which a magistrate has found probable cause to authorize the search.").

The state argues, however, that for constitutional purposes, any facial overbreadth in the duplicate original's description of the premises is cured by reference to the magistrate's oral authorization:

> "With telephonic search warrants, the legally significant act of authorization is the issuing judge's oral statement to the officer authorizing the officer to search a particular place; it is not the officer's written recordation of that authorization. In this respect, telephonic search warrants are different from ordinary written warrants and should be judged under a different standard. When a judge reads a written proposed warrant and signs it, he authorizes what is written. The written warrant is itself the authorization to search. When a judge authorizes a telephonic warrant, however, he does not see anything in writing. He orally authorizes the search, and it is that oral authorization that sets the limits of the search authorized. The officer who thereafter writes out a paper duplicate warrant, attempting to restate the authority granted orally by the judge, cannot change the limits of the search authorized. The officer is entitled to do no more, and no less, than the judge orally authorized the officer to do. In that sense, the judge's oral statement is itself the original search warrant; the written duplicate is simply the officer's attempt to memorialize the authority that has been granted by the judge."

The state's argument thus begins with the premise that, at least in some circumstances, Article I, section 9, permits courts to orally authorize searches without contemporaneously memorializing that authorization. We need not, and do not, decide the correctness of that premise because, even if a memorialized oral authorization were constitutionally permissible, in this case (1) the duplicate original warrant that the officers executed and served materially deviated from the

court's oral order, and (2) that warrant was facially over-broad. Those circumstances, in combination, violated the particularity requirement of Article I, section 9.

■ The state's contention that the overbreadth could be cured by reference to the court's oral authorization fails for several reasons. First, the duplicate original warrant's description of the premises to be searched was unambiguous. There was no reason, as the state suggests, for an executing officer "to go back and check the tape of the telephone conversation to determine which apartment the court had authorized the police to search."

Nor did Gardiner's knowledge of the particulars of the court's oral authorization remedy that constitutional defect. The duplicate original warrant purported to authorize *"any police officer in the state of Oregon"* to search 524 Spruce Street. Thus, regardless of Gardiner's knowledge, the face of the executed warrant was controlling. *See, e.g., Davis,* 106 Or App at 552 ("[B]ecause the warrant was directed to 'any police officer of Douglas County,' there was no assurance that the affiant would be the executing officer. The officer's knowledge of the contents of the affidavit is irrelevant."). As we explained in *Davis*:

> "The lesson of *Blackburn / Barber* and *Devine* is that the authority of an officer to search premises under a search warrant is wholly circumscribed by the description in the warrant. * * * If we were to accept the state's argument, an officer would have authority to search premises on the basis of his knowledge, even though those premises were not accurately described in either the affidavit or the warrant. As the Supreme Court did in *Devine*, we reject the suggestion that the executing officer's good faith or reasonableness has anything to do with the inquiry." 106 Or App at 551-52.

Ultimately, the state's "oral warrant" argument founders on the incontrovertible fact that the officers here did not execute *that* warrant. Instead, they presented and executed the duplicate original warrant—a warrant that deviated materially from the magistrate's authorization and that

"describe[d] [the] premises in such a way that it [made] possible the invasion of [an] interest in privacy without the foundation of probable cause for the search." *Blackburn / Barber*, 266 Or at 34. That process violated Article I, section 9. Consequently, the court correctly allowed the motion to suppress.

Affirmed.