Argued June 1, reversed and remanded August 10, petition for
rehearing denied September 19, petition for review
allowed December 28, 1972

## STATE OF OREGON, *Appellant, v.*
## REID TURNER BLACKBURN (No. 28226),
### *Respondent.*

## STATE OF OREGON, *Appellant, v.*
## BRUCE CAMERON BARBER (No. 28204),
### *Respondent.*

499 P2d 1325

*John H. Clough,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*H. W. Devlin,* McMinnville, argued the cause and filed the brief for respondents.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

This is an appeal by the state from orders suppressing evidence in two criminal cases which were consolidated for hearing both in the trial court and in this court.

The trial judge ruled that the search warrant under which rooms occupied by defendants in a multiple-occupancy basement were searched and a quantity of marihuana seized was fatally defective for the reason that it failed to describe the place to be searched with sufficient particularity, and granted defendants' motions to suppress. The state contends that the trial court erred because the search warrant was sufficient to permit the police officers executing

the warrant to locate and search the premises and to seize the evidence on which the prosecutions were based.

The rooms in which the disputed search occurred were located in the basement of a residence in Mc-Minnville. The evidence was that the basement area had been divided into a series of small rooms which were rented individually to five tenants. In addition, the basement contained a central kitchen-living room-bathroom area which was used in common by all tenants. The rooms occupied by the two defendants were located on opposite sides of the common area. This area also provided the sole access to defendants' rooms. The door to the kitchen-living room-bathroom area had no number on it, and was kept open at all times. A short hallway led from this common area to the street entrance.

The room occupied by defendant Bruce Barber and another student named Welton was known by the landlord as "No. 4-5," and had affixed to the door three separate cards with printed matter on each. The top card, which was the smallest of the three, had the letters "ECURB" ("ECURB" is Bruce spelled backward) printed on it. The middle card bore what appears from a photograph offered in evidence to be an engraving showing Neptune emerging from the sea. The bottom card had the words "CHANGE . . . CONTROVERSY . . . CHALLENGE" printed on it. The door, however, bore no numerals. The room occupied by defendant Blackburn had the numeral "2" on it. A room occupied by a fourth student named Roberts with the numeral "3" on the door also led off the common area.

The search warrant described the premises to be

searched as "* * * Apartment Number 2 in the basement of the residence at 240 South Davis Street, said apartment having the letters ECURB on the door * * *." The affidavit supporting the issuance of the warrant described the premises three times in the same manner. The affiant, who was also the officer in charge of executing the search warrant, obtained his information from an anonymous informant who had been at the named premises on the night of August 2, 1971. The state's evidence was that the informant had observed a quantity of marihuana there while attending a party.

The search warrant was executed at approximately 4 a.m. on August 3 by the affiant, Deputy Sullivan, and several uniformed police officers. Upon entering the basement area, the officers went down the hall to the open and unmarked door leading to the common area and knocked several times. Deputy Sullivan testified concerning subsequent events as follows: That he looked on the face of the door and did not see any markings; that he could see all of the common area without entering and that he could see the doors marked "2" and "3," which were closed; that defendant Barber responded to the knocking; that he asked Barber "if he was Barber and if this was Apartment No. 2," to which Barber replied "That is true"; that he showed Barber the search warrant and gave him the *Miranda*[①] warnings; that he figured the whole apartment was "Apartment No. 2" and further relied on Barber's statement that it was; that he was told by his informant that there were two apartments in the basement; that prior to entering the building

___

[①] Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

the officers verified the license number of an automobile in front of the house and found that it was Barber's automobile; that Barber's room was searched producing, among other things, two "lids" of marihuana from the closet; and that Barber admitted he possessed marihuana. Some time later defendant Blackburn produced two "joints" of marihuana from his room and handed them to one of the officers. Shortly thereafter defendants were arrested for possession of marihuana.

There is a conflict in the testimony as to whether Sullivan asked Barber if the whole area was "Apartment No. 2." Sullivan testified that Barber indicated that it was "Apartment No. 2"; Barber testified that he did not.

■ There is also a conflict over the sequence of events that next followed. However, there is no contention urged in defendants' brief nor in oral argument that the *Miranda* advice was not given before the questioning and the search. They did not search room "1," which opens on the hallway. No effort was made initially to locate a door with the letters "ECURB" as described in the search warrant. Barber's "ECURB" door was open from the time the officers first entered. Approximately an hour and a half had elapsed before one of the officers looked on the face of the door and saw the letters "ECURB" thereon. Marihuana was found in Barber's room ("ECURB").

Based upon the testimony which we have just summarized the trial court ordered the marihuana suppressed. The court issued a memorandum opinion but made no special findings of fact. From a reading of the court's memorandum opinion we conclude that the court rested its decision to suppress entirely on

what it considered to be a fatal variance between the description in the warrant of the room to be searched, and the physical facts subsequently disclosed during the search. We reverse and remand. After examining the entire record we conclude that under the standards applied in *State v. Cortman,* 251 Or 566, 446 P2d 681 (1968), *cert denied* 394 US 951 (1969), *State v. Koberstein,* 8 Or App 307, 493 P2d 176 (1971), Sup Ct *review denied* (1972), and *State v. Skrelunas,* 1 Or App 182, 460 P2d 869 (1969), the warrant in this case sufficiently specified the premises to be searched.

After the officers searched defendant Barber's room, and after defendant Blackburn produced two "joints" of marihuana from his room, they had probable cause to search Blackburn's room as well as the common area. *People v. Gorg,* 157 Cal App2d 515, 321 P2d 143 (1958). However, the search of room "3," which was occupied by Roberts, was improper. There is nothing in the record to indicate that prior to extending their search to this room the officers had probable cause to believe that room "3" contained marihuana or that Roberts was in any way involved with marihuana found in the possession of defendants Barber and Blackburn.

We recognize that there was a variance between the description of the premises in the warrant and the physical facts discovered in the course of the search. Under all the facts presented here, however, this variance was not such an irregularity as to render the warrant fatally defective and thereby invalidate the search and seizure.

In *Hanger v. United States,* 398 F2d 91 (8th Cir 1968), *cert denied* 393 US 1119, *rehearing denied* 395 US 971 (1969), the court held that although the search

warrant specified the premises to be searched as "Apartment 1419," it was a valid warrant to authorize the search of "Apartment 1419a," where it was found at the time of executing the warrant that that was in fact the apartment number at the premises to be searched.

In *People v. Watson*, 26 Ill2d 203, 186 NE2d 326 (1962), the court held that a search warrant describing premises as "apartment number 604 of the building known as 2300 S. State St.," permitted search of apartment 604 at "2310 S. State St." In addition the court said:

> "* * * [O]ther identifying factors [existed here] which removed any doubt or ambiguity from the description * * *." 26 Ill2d at 206.

*People v. Watson*, supra, was followed in *People v. Aiuppa*, 48 Ill App2d 95, 99-100, 198 NE2d 738 (1964), where the court said:

> "* * * We are fully in accord with the principle enunciated in People v. Watson, * * * that search warrants should not be quashed for hypertechnical reasons."

Again in *People v. Mecca*, 132 Ill App2d 612, 270 NE2d 456 (1971), the Illinois Appellate Court held that a warrant which allowed a search of premises at 3322 South Western Boulevard, and indicated the house had imitation brick siding, was sufficient notwithstanding the arrest of defendant and seizure of gambling paraphernalia was made at 3322 South Western *Avenue,* an adjoining street, at a house sided with brown imitation siding.

> "* * * [E]ven where a reading of the address listed on a search warrant taken by itself does not actually pinpoint the premises to be searched other identifying factors may be considered to enable the

officer to locate the premises with definiteness and certainty." 132 Ill App2d at 614.

Similarly in *United States v. Contee,* 170 F Supp 26 (D DC 1959), the court held that a search warrant describing the premises as " 'Apt. A' in 810 C St. N.E.," and occupied by Joan Williams (defendant), when in fact there was no "Apt. A" at 810 C Street, permitted the search of defendant's apartment notwithstanding. The evidence established that there were two apartments at that address and that the police entered and searched the apartment occupied by defendant. The court said:

"It should be emphasized that this is not a case where the warrant described one place and the police searched another. This is a case of a superfluous designation which, we have assumed, is erroneous. Steele v. United States No. 1, 1925, 267 U.S. 498, at page 503, 45 S.Ct. 414, 416, 69 L.Ed 757, sets forth the general principle that

" 'It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify [it].' (Taft, C.J.)

The Court is of the opinion that an officer, with reasonable effort, could identify the defendant's apartment as the one commended to be searched. Cf. Irwin v. United States, 1937, 67 App. D.C. 41, 89 F.2d 678." 170 F Supp at 27.

This type of variance has also been upheld in the search of automobiles where the license number given varied slightly from that of the vehicle searched. *Wangrow v. United States,* 399 F2d 106, 114-15 (8th Cir), *cert denied* 393 US 933 (1968).

The warrant in the case at bar was sufficient to enable the executing officer to locate the premises to be searched with reasonable certainty.

Reversed and remanded.

SCHWAB, C.J., dissenting.

I would affirm the trial court's grant of the defendants' motion to suppress.

The affidavit in application for a search warrant established probable cause to search *one, and only one,* apartment. The affidavit and warrant repeatedly described the apartment to be searched as "* * * Apartment Number 2 in the basement of the residence at 240 South Davis Street, said apartment having the letters ECURB on the door * * *." This was the only descriptive material in the documents.[1] There was no such apartment. What the officers executing the warrant discovered was a common area with three separate apartments leading off it. Apparently, being confused about which apartment to search, the officers solved their problem by searching everywhere—the common area and all three apartments.

With these facts in mind, I do not believe any of the cases cited by the majority are on point. All of those cases deal with the question of whether a search warrant is invalid because it does not describe the premises to be searched with sufficient definiteness. *See,* e.g., *State v. Cortman,* 251 Or 566, 446 P2d 681 (1968), *cert denied* 394 US 951 (1969). It cannot be seriously contended that "Apartment Number 2 * * * having the letters ECURB on the door" is an indefinite

---

[1] An inference can be drawn from the record that the informant had told the police that the occupant of the room in question was the defendant Barber. If, as additional descriptive material, the affidavit or the warrant, or both, had described the premises to be searched as being occupied by a person named Barber I might well feel differently about the result reached by the majority.

description. In my view, the case at bar is an *erroneous description* case, not an *indefinite description* case.

There is a basic distinction between these two types of cases. When a search warrant is held to contain an indefinite description of the place to be searched, it is invalid when issued. While the physical characteristics of the premises the executing officers encounter and what they do in an effort to locate the proper place to search are sometimes evidentiary on the question of whether the warrant description is sufficiently definite, the ultimate question remains whether, looking to the language of the warrant, it was valid when issued. Such an analysis was implicit in our decision in *State v. Koberstein,* 8 Or App 307, 493 P2d 176, Sup Ct *review denied* (1972), where we held that if the defendants had proved the police knew or should have known that the building in which they lived had separate apartments then the warrant would have been invalid *when issued* because it failed to designate the apartment to be searched.

On the other hand, while a search warrant containing an erroneous description is valid when issued, it becomes invalid if the executing officers discover that there is an error in the warrant of such magnitude that they are unable to determine what premises the warrant authorizes them to search. The significant inquiry in such a case must center on the nature of the premises the executing officers encountered, rather than on the language of the warrant.

While I find no cases which clearly articulate this distinction between a search warrant description which is fatally indefinite and one which is fatally erroneous, CJS states what to me is a common-sense rule:

"Where it appears that the description of the

place to be searched is erroneously stated in the warrant, the warrant is invalid. However, where the place has been otherwise described with such definiteness as to leave no discretion to the officer, misdescriptions will be treated as surplusage or as not invalidating the warrant." 79 CJS, Searches and Seizures 890, § 81.

*See also, Mrs. David Combs v. The State,* 141 Tex Cr 476, 149 SW2d 971 (1941) (warrant held invalid when police admitted the description of the place to be searched was erroneous).

It is conceded in this case that: (1) there is no such place as "Apartment Number 2 * * * having the letters ECURB on the door"; and (2) Apartment 2 and the apartment with the letters ECURB on the door are two separate apartments. Suppose the executing officers had entered a more typical apartment hallway and immediately seen those two separate apartment doors. Since they knew from the affidavit and/or warrant that they had probable cause to search only one apartment, it would be impossible for them to execute the warrant any other way than flipping a coin. The odds would be 50-50 that they would search the right place or would illegally invade someone's privacy. As I understand the CJS rule quoted above, in such a situation the warrant would be invalid and the officers would not have authority to search either apartment.

Under the factual circumstances of this case, I think the result should be the same. When the officers were in the hall outside the open door to the common area they could see, using flashlights, other doors with "2" and "3" on them leading off the common area. These doors had the kinds of locks on them that indi-

cated to the officers, or reasonably should have indicated to them, that each door was an entry to a separate living unit. Although the officers were thus on notice that something might be wrong with the description in the warrant ("Apartment Number 2 * * * having the letters ECURB on the door"), by their own admission they proceeded to search everywhere without even looking for the letters ECURB.

While, as noted above, the facts in *State v. Cortman,* supra, are not analogous to those at bar, the policy considerations articulated in *Cortman* are relevant:

> "The purpose of the particular-description requirement is to narrow the scope of the search to those premises for which a magistrate has found probable cause to authorize the search. When the warrant designates the premises by means that will properly limit the search, *there is little risk that other premises will be subjected to unreasonable examination.*" (Emphasis supplied.) 251 Or at 569.

As is the case with a warrant vaguely describing the premises to be searched, when a warrant erroneously describes the premises to be searched there is a great "risk that other premises will be subjected to unreasonable examination." On the facts at bar, this is not just a great risk—it is what actually happened.

I might be more inclined to uphold the search in this case if it were factually established either that: (1) the common area and separate rooms leading off it were really one large apartment jointly occupied by several persons as was the case in *People v. Gorg,* 157 Cal App2d 515, 321 P2d 143 (1958) (cited by the majority for a different proposition for which it does not stand); or (2) defendant Barber told the executing

officers that the entire apartment was Apartment 2. However, I believe both of these points have been factually determined by the trial judge contrary to the validity of the search.

As the majority points out, the trial judge "made no special findings of fact." In such a situation the rule is clear:

"* * * If findings are not made * * * and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the ultimate conclusion * * * made by the trial court * * *." *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968).

At the suppression hearing one of the executing officers testified that defendant Barber told them that the entire area they searched was Apartment 2. Barber testified that he made no such statement. Since the trial judge granted the motion to suppress, we are required to presume it was factually determined that Barber never made that statement.

We have frequently applied the rule of *Ball v. Gladden,* supra, in appeals by defendants. In *State v. Fisher,* 92 Adv Sh 881, 5 Or App 483, 484 P2d 864 (1971), we noted that the knife cuts both ways—that the *Ball v. Gladden,* supra, rule is equally applicable in appeals by the state.

Even assuming, arguendo, that the search warrant was valid, since it only authorized, at most, a search of defendant Barber's apartment (albeit erroneously described), I fail to comprehend how that warrant permitted the officers to search the common area and two additional apartments.

The majority states:

> "* * * after defendant Blackburn produced two 'joints' of marihuana from his room, they [the officers] had probable cause to search Blackburn's room as well as the common area * * *." Majority opinion at p 559.

It is true that while being questioned by the officers Blackburn admitted he had marihuana in his room. However, it is important to note that the officers first entered Blackburn's apartment at about 4 a.m., woke him up, required him to get dressed, took him out to the common area, and then began the questioning that produced the admission relied upon by the majority. The majority cites nothing that makes the *initial entry* into Blackburn's room legal. In my opinion it was clearly illegal. I do not believe we should sanction the establishment of probable cause by such cavalier means.

Moreover, it is settled doctrine that no amount of probable cause justifies a search in the absence of a valid warrant or facts bringing the search within one of the exceptions to the warrant requirement. *State v. Keith,* 2 Or App 133, 465 P2d 724, Sup Ct *review denied* (1970). Here, there never was a warrant of any kind —valid or invalid—to search the common area or Blackburn's room. And I find nothing in the record creating an exception to the warrant requirement.

For the foregoing reasons I respectfully dissent.