Argued February 6, reversed as to Blackburn and affirmed and remanded to the trial court for trial as to Barber, June 21, 1973

## STATE OF OREGON, *Respondent, v.* REID TURNER BLACKBURN, *Petitioner.*

## STATE OF OREGON, *Respondent, v.* BRUCE CAMERON BARBER, *Petitioner.*

511 P2d 381

*H. W. Devlin,* McMinnville, argued the cause for petitioners.

*John H. Clough,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the briefs were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

HOLMAN, J.

These two criminal cases were consolidated for hearing both in the trial court and in the Court of Appeals. The trial court granted defendants' motion to suppress on the ground that the search warrant under which evidence was seized failed to describe the place to be searched with sufficient particularity. The state appealed and the Court of Appeals reversed. *State v. Blackburn/Barber,* 10 Or App 564, 499 P2d 1325 (1972). We granted the petition for review.

■ Determination of the legality of searches depends largely upon the facts of each case,[1] and for this reason evidence adduced at the suppression hearing will be recited in some detail. Because the trial court ruled in favor of defendants' motion without making special findings of fact, conflicts in the evidence will be resolved in accordance with the trial court's ruling.[2]

The disputed search occurred in rooms located in the basement of a residence in McMinnville. The ground floor was occupied by the owners of the property. The basement area consisted of four rooms, plus a common lounge and bathroom. Each room was occupied by one tenant, with the exception of one room occupied jointly by Richard Welton and defendant Bruce Barber. Each of the five tenants paid his rent separately.

A street entrance to the basement on the east

---

[1] State v. Douglas, 260 Or 60, 488 P2d 1366 (1971), *cert. denied,* 406 US 974.

[2] Ball v. Gladden, 250 Or 485, 487, 443 P2d 621 (1968).

side of the building led down to a short hall. The door to Apartment 1 was located on the right side of the hall. Another door, which was padlocked, was located at the end of the hall and led into a furnace room. A third door, which was unmarked and apparently always left open, was on the left side of the hall and led into the common lounge area.

As one would enter the lounge area, immediately to the left was a door leading into the room occupied by defendant Reid Blackburn. This room constituted the southeast corner of the basement, and its door was marked with the numeral 2. At the opposite end of the common room was another short hall, at the end of which was a door marked with the numeral 3. This room constituted the southwest corner of the basement, and was occupied by Frank Roberts. On the right side of the hall was a door to the room constituting the northwest corner of the basement and occupied by Welton and defendant Bruce Barber. This last door bore no numerals, although it was known by the landlord as "No. 4-5." Three cards were affixed to the door. The top card had the letters ECURB® printed on it. The middle card was a picture, and the bottom card had the words "CHANGE . . . CONTROVERSY . . . CHALLENGE" printed on it. Each of the doors (1, 2, 3, and ECURB) was equipped with a conspicuous lock.

In the early morning of August 3, 1971, a search warrant was issued describing the suspect premises as "\* \* \* Apartment Number 2 in the basement of the residence at 240 South Davis Street, McMinnville, Oregon, said apartment having the letters ECURB on the door \* \* \*." The affidavit in application of the

---

® ECURB is Bruce (Barber) spelled backward.

warrant described the premises three times in the same manner. The affiant, Officer Sullivan, who was also in charge of executing the warrant, obtained this information from an anonymous informant who had visited the premises on the night of August 2, 1971. The affidavit stated that the informant had observed a quantity of marijuana at the named premises. According to the officer's testimony, the informant indicated that the occupant of the room in question was Bruce Barber, but Barber's name was mentioned neither in the warrant nor in the supporting affidavit.

At approximately 4:00 a.m. on August 3, 1971, the search warrant was executed by Officer Sullivan and several police officers under his command. Upon entering the outermost hall of the basement, they passed by Apartment 1 and knocked several times at the open, unmarked door leading into the common room. Defendant Barber was awakened by the knocking, entered the common room and called for the visitors to come in. This they did.

From the lounge area Officer Sullivan noticed the number 2 on Blackburn's room. Barber's door was open so that the cards affixed to its face could not be seen. Officer Sullivan asked Barber if he was Bruce Barber, and when this was affirmed Sullivan announced that they had a search warrant for his apartment. Barber was directed to remain seated in the lounge area and a search of his room was commenced. Officer Sullivan asked Barber if there was any marijuana in his room. Barber responded affirmatively, and thereafter two "lids" of the substance were found in his closet.

Meanwhile, other officers had entered room 3 where Roberts was sleeping and the room marked 2

in which defendant Blackburn was asleep. Both doors had been shut or very nearly shut. Roberts and Blackburn were subsequently ordered into the common room and asked if they had marijuana. Roberts denied having any but Blackburn responded that he did. Upon request, Blackburn returned to his room and brought two marijuana cigarettes to the officers. The Blackburn and Roberts rooms were then re-entered and searched.[*]

In all, the officers searched rooms 2, 3, the unnumbered room (4-5) marked ECURB, and the lounge area of the basement. No effort was made to locate a door with the letters ECURB as described in the search warrant; approximately an hour and a half had elapsed before one of the officers noticed the cards on the face of defendant Barber's door. Defendants Barber and Blackburn were charged with illegal possession of narcotics. Roberts, not a defendant here, was charged with "frequenting."

As previously mentioned, the infirmity of the warrant and search conducted thereunder was argued to the trial court, and the motion to suppress was granted. The Court of Appeals reversed, finding that, despite the variance between the description of the premises in the warrant and the facts discovered in the course of its execution, the warrant "was sufficient to enable the executing officer to locate the premises to be searched with reasonable certainty." 10 Or App at 571, 499 P2d at 1328 (1972).

---

[*] There is conflict in the testimony as to precisely when the tenants were apprised of their constitutional rights under Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966). This question was not raised before the Court of Appeals or this court, however, and discussion of the facts relating thereto is omitted for the sake of clarity.

■ ■ Both the Fourth Amendment to the United States Constitution and Article I, § 9, of the Oregon Constitution require a search warrant "particularly describing the place to be searched."⑤ It has been explained that "the historical motivation for this constitutional mandate was a fear of 'general warrants,' giving the bearer an unlimited authority to search and seize."⑥ More specifically, the aim of the requirement of particularity is to protect the citizen's interest in freedom from governmental intrusion through the invasion of his privacy. If the search warrant describes premises in such a way that it makes possible the invasion of this interest in privacy without the foundation of probable cause for the search, the warrant is too broad and therefore constitutionally defective.⑦

---

⑤ "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Amendment IV, Constitution of the United States.

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." Art. I, § 9, Oregon Constitution.

⑥ Cook, Requisite Particularity in Search Warrant Authorizations, 38 Tenn L Rev 496 (1971), citing Boyd v. United States, 116 US 616 (1886); Olmstead v. United States, 277 US 438 (1928); Henry v. United States, 361 US 98 (1959); Barrett, Personal Rights, Property Rights and the Fourth Amendment, 1960 S Ct Rev 46.

⑦ "The purpose of the particular description requirement is to narrow the scope of the search to those premises for which a magistrate has found probable cause to authorize the search. When a warrant designates the premises by means that will properly limit the search, there is little risk that other premises will be subjected to unreasonable examination." State v. Cortman, 251 Or 566 at 569, 446 P2d 681 (1968), *cert. denied,* 394 US 951 (1969).

(Continued on page 35)

█ In testing a warrant for definiteness "it is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain the identity of the place intended."⑧ The description must be sufficiently clear so that the property to be searched is recognizable from other neighboring properties.⑨ If, however, a warrant purporting to authorize a search is sufficiently ambiguous that it is impossible to identify with a reasonable degree of certainty the particular premises authorized to be searched, the warrant may not be executed and any search pursuant to it is illegal, whether of the premises actually intended or not, because of the danger that the privacy of unauthorized premises will be invaded.

█ When the officers possessed a warrant which authorized the search of Apartment 2 which had ECURB on the door and there was no such apartment, but there were an Apartment 2 and an unnumbered apartment with ECURB on the door, they could not execute the warrant if real doubt existed as to which was intended. We hold there could be no real doubt as to which of the premises was intended by the warrant and that it could be ascertained with reasonable certainty. No one could have made a mistake or been confused about a word like ECURB, but anyone could easily

---

(Continued from page 34)

*See also*, United States v. Sklaroff, 323 F Supp 296, 321 (S.D. Fla 1971); United States v. Joseph, 174 F Supp 539, 544 (E.D. Pa. 1959); United States v. Hinton, 219 F2d 324, 325 (7th Cir 1955); People v. Fitzwater, 260 Calif App 2d 478, 67 Cal Rptr 190, 194 (1968); State v. Daniels, 46 N J 428, 217 A2d 610, 615 (1966).

⑧ Steele v. United States, 267 US 498, 503, 45 S Ct 417, 69 L Ed 757 (1924); State v. Cortman, 251 Or 566, 446 P2d 681, *cert.* *denied*, 394 US 951 (1969).

⑨ United States v. Pisano, 191 F Supp 861 (S.D. N.Y. 1961); State v. Daniels, 46 N.J. 428, 217 A2d 610 (1966).

have made a mistake about a numeral. ECURB was a significant and more unmistakable guide than a mere number. If there is never any greater uncertainty about what is intended, the right of the public to be secure in their premises from unauthorized trespass by police officers will be ensured.

Cases generally hold that where apartment or street addresses in the warrant are in error but there is other identifying information in the warrant by which the officers can determine with a reasonable degree of certainty the premises intended, they properly may proceed to make the search.[10]

█ It has been contended that the officers' search of Apartment 2 demonstrates that the discrepancy created a substantial risk that unintended premises would be searched. We believe it does not so demonstrate because, in addition to Apartment 2, the police searched almost the entire basement premises, including the common room and Apartment 3, which were not mentioned in any way by the warrant. However, the fact that they were acting unauthorizedly in searching other premises should not invalidate an authorized search of the premises intended.

There was no authority to search any part of the premises except the apartment with ECURB on the door. As a result, the evidence against Blackburn which was seized in his Apartment 2 was properly quashed by the trial court and that part of the opinion

[10] People v. Mecca, 132 Ill App 2d 612, 270 NE2d 456 (1971); United States v. Goodman, 312 F Supp 556 (N.D. Ind. 1970); Hanger v. United States, 398 F2d 91 (8th Cir 1968), *cert. denied*, 393 US 1119, 89 S Ct 995, 22 L Ed 2d 124 (1969), *rehearing denied*, 395 US 971, 89 S Ct 2106, 23 L Ed 2d 761 (1969); People v. Watson, 26 Ill 2d 203, 186 NE2d 326 (1962); United States v. Pisano, 191 F Supp 861 (S.D. N.Y. 1961); United States v. Contee, 170 F Supp 26 (D DC 1959).

of the Court of Appeals holding to the contrary is reversed. That part of the Court of Appeals' opinion reversing the trial court's quashing of the evidence against Barber is affirmed.

O'CONNELL, C. J., dissenting.

The requirement that a warrant specify the place to be searched was designed to prevent the abuses and evils which flowed from searches made under general warrants. An ambiguous warrant in the hands of a police officer creates the risk that he will either wittingly or unwittingly invade the privacy of a citizen as to whom no probable cause has been established. The warrant in the present case creates such a risk.

The majority holds that there "could be no real doubt as to what premises were intended by the warrant" because "no one could have made a mistake or been confused about a word like ECURB, but anyone could easily have made a mistake about a numeral."

I do not think that the directions in the warrant are that clear. An officer attempting to execute this warrant would first read that he was authorized to search "Apartment 2 in the basement of the residence" at the named address. Reading on, he would see what was intended as a further description of that apartment—"* * * said apartment having the letters ECURB on the door."

The majority assumes that when an officer, in attempting to execute this warrant, finds the two parts of the description inconsistent he will choose the designation "ECURB" because, being unique, it is more likely to have been the one intended. However, it cannot be assumed that an officer would realize, as we now

do, that "ECURB" was intended as the equivalent of "BRUCE," and thus as a designation of the place where an individual resided. The card bearing the word "ECURB," like the picture and the other card with the inscription "CHANGE . . . CONTROVERSY . . . CHALLENGE," would simply appear to constitute a message of some kind and not the expression of an occupant's identity. The officer would note that, unlike the designation of Apartment 2 with a permanently affixed numeral, the word ECURB was on a card which was moveable, and that it therefore could have been on the door of Apartment 2 when the informant identified the suspect premises but removed or relocated prior to the actual search.

Since, in my opinion, there is a real possibility that an officer might construe a warrant such as we have here as authorizing a search of Apartment 2 only, the warrant is invalid because it creates the risk that premises not authorized to be searched would be subjected to unreasonable examination.

In addition to the foregoing reason for holding the warrant invalid, I adopt the reasoning in the dissenting opinion of Chief Judge SCHWAB in this case when it was decided in the Court of Appeals.

DENECKE, J., joins in this dissent.