Nancy L. EWING and Timothy L. Kline, Appellants–Defendants,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 25A03–9208–CR–238.

Court of Appeals of Indiana, Third District.

May 4, 1993.

Rehearing Dismissed July 13, 1993.

**55**

GARRARD, Judge.

Nancy Ewing and Timothy Kline appeal their convictions for dealing in marijuana by possessing with intent to deliver marijuana in excess of 10 pounds, and manufacturing marijuana in excess of 10 pounds, class C felonies, and maintaining a common nuisance, a class D felony.

FACTS AND PROCEDURAL HISTORY:

At approximately 2:30 A.M. on February 18, 1991, officer Rodney Fisher of the Rochester City Police Department was contacted by Matt Clupper, an informant who had made controlled buys for the Rochester police on previous occasions. Clupper told Fisher that he had been at the house of David Pinder on the previous afternoon and that Pinder had shown him what appeared to be three pounds of marijuana under a mattress in his bedroom. Pinder also told Clupper that there was more marijuana in a barn on the property, but he did not see it.

Based on this information, Officer Fisher prepared an affidavit for a search warrant. Clupper, however, was unable to supply adequate directions to the property due to its location in rural Fulton County. Officer Fisher took steps independent of Clupper to determine the location of the house. Another officer, Jim Hubbard, supplied the correct rural route and box number for David Pinder (Rural Route # 1, Box 88, Kewanna) from an accident report and two other officers familiar with the area gave a description (775 West and 200 South, first house on the North side of the road, white house) where they thought this David Pinder lived. The description given by the two officers, however, described the residence of a different Mr. Pinder. This information was read to Clupper who stated "that sounds correct," and was incorporated into the affidavit. Clupper then initialed the affidavit. The police officers next obtained a search warrant which stated essentially the same name, address, and description contained in the underlying affidavit.

With warrant in hand, Officer Fisher, accompanied by the other officers, attempted to locate the property. Instead of going to the correct address at Rural Route # 1,

Kelly Leeman, Logansport, for appellants-defendants.

Linley E. Pearson, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

Box # 88, however, the officers proceeded directly to the residence incorrectly described in the warrant at the crossroads of 775 West and 200 South. When they arrived, a Mr. Pinder answered the door. After the officers gathered everyone into one area of the house and read the search warrant to them, they were quickly advised that they had come to the wrong house. The second Pinder told the officers that he did not know where the David Pinder listed in the warrant lived, but he was able to inform the officers that he resided with his mother, Nancy Ewing. Two of the officers at the scene stated that they were familiar with where Nancy Ewing lived and, after leaving the first house, the officers proceeded directly to Nancy Ewing's residence.

While the officers were en route to the Ewing residence, they discussed among themselves whether a new warrant was required for this search. The officers determined that since the original warrant contained the correct name and postal address, the warrant was still valid. Officer Fisher also believed that time was of the essence since the second Mr. Pinder could telephone a warning to David Pinder giving the latter time to destroy evidence.

When the officers arrived at the Ewing residence a few minutes later, their knock was answered by Timothy Kline. Nancy Ewing and David Pinder were also present in the home. After reading the warrant, all of the occupants of the house were gathered together and transported away from the residence. The ensuing search revealed a total of 22 pounds of marijuana scattered throughout the house, a growing room in the basement containing 446 marijuana plants in various stages of development, drug paraphernalia, and other related material.

On March 22, 1991, defendants Ewing and Kline (defendants) filed a motion to suppress the evidence found in the search, alleging that the search warrant was constitutionally defective. On April 22, 1991, the trial court denied the motion and subsequently set a joint bench trial for defendants on February 19, 1992. On the morn-

ing of the trial, however, the state moved to continue the trial past the presumptive one year period required by Crim.Rule 4(C), due to the unavailability of a state witness. Over a defense objection, the trial was rescheduled for April 23, 1992. After trial, the court entered verdicts of guilty against both defendants.

ISSUES:

Defendants present five issues for appeal which we restate as follows:

I. Whether the state failed to bring defendants to trial within one year as required by Crim.Rule 4(C) necessitating the dismissal of their convictions.

II. Whether the search warrant in this case failed to particularly describe the place to be searched requiring that the evidence seized in the search of defendants' home be suppressed.

III. Whether the evidence before the trial judge was sufficient to find that the 22 pounds of "green leafy substance" found in defendants' home was marijuana, supporting defendants' conviction for dealing in marijuana.

IV. Whether the evidence before the trial judge was sufficient to demonstrate that the defendants constructively possessed marijuana.

V. Whether the evidence before the trial judge was sufficient to sustain defendants' conviction for Maintaining a Common Nuisance.

DISCUSSION:

Issue I:

 Defendants first contend that the state failed to bring them to trial within the one year period required by Crim.Rule 4(C) and that such failure requires the dismissal of their convictions. We disagree.

Crim.Rule 4(C) reads in pertinent part: No person shall be held on recognizance or otherwise to answer to a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except

where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar.... Any defendant so held shall, on motion, be discharged.

Under CR 4(C) the state has an affirmative duty to bring a criminal defendant to trial within one year. *Bates v. State* (1988), Ind.App., 520 N.E.2d 129, 131, *trans. denied.* The one year limit commences to run automatically with the later of either the filing of charges against the defendant or his arrest. *Id.* This period is not absolute, however, and can be extended by any delay arising from any continuance had on defendants' motion, by any delay caused by defendants' act, or by congestion of the court's calendar. *Id.*

■ In addition, Crim.Rule 4(D) provides for an additional 90 days under certain circumstances:

If when application is made for the discharge of a defendant under this rule, the court be satisfied that there is evidence for the state, which cannot then be had, that reasonable effort has been made to procure the same and there is just ground to believe that such evidence can be had within ninety (90) days, the cause may be continued, and the prisoner remanded or admitted to bail; and if he be not brought to trial by the state within such additional ninety (90) days, he shall then be discharged.

The absence of a key witness through no fault of the state is considered good cause for extending the time period under CR 4(D). *Id.*

Therefore, in order to determine the exact period during which a defendant must be brought to trial, we add to one year the length of any delays for which CR 4(C) makes exception. *Id.* If the defendant has not been brought to trial within this period of time he must be discharged. If, however, the state demonstrates that it has met the requirements of CR 4(D), the defendant will not be released and the state has 90 additional days to bring the defendant to trial.

The record in this case reveals that the defendants were formally charged by information on February 25, 1991. The defendants made no motions for continuance, did not further cause any delay, and no other CR 4(C) cause for delay was found. The original trial date was set for February 19, 1992.

On the morning of February 19, 1992, the state moved for a continuance beyond the CR 4(C) one year period due to the unavailability of a state witness. Defense counsel objected based on the state's alleged failure to list the witness or show proof that this witness had been subpoenaed, and that a continuance would violate defendants' CR 4 rights by extending the trial beyond the one year deadline.

■ It is clear that the defendants in this case were not brought to trial within the CR 4(C) one year period. The state, however, contends that the trial court correctly granted its continuance based upon CR 4(D). In this situation, we presume that the trial court correctly decided the question. *Fort Wayne Educ. Ass'n, Inc. v. Board of School Trustees of Ft. Wayne Community Schools* (1991), Ind.App., 569 N.E.2d 672, 677. Defendants must rebut this presumption by clearly showing that the trial court committed serious error which denied the defendants the relief to which they are entitled as a matter of law. *Id.* Specifically defendants must point to facts in the record that demonstrate that the state did *not* meet the requirements of CR 4(D). This they have not done. The state therefore was properly granted the additional 90 days. Because defendants were tried on April 23, 1992, well within the additional 90 day period, we find that the defendants were properly afforded their CR 4 rights and no error was made.

Issue II:

■ Defendants next contend that the search warrant in this case failed to particularly describe the place to be searched and that this error requires the suppression of all evidence seized in the search of defendants' home. We disagree.

The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one "particularly describing the place to be searched and the persons or things to be seized." *Maryland v. Garrison* (1987), 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72. The Indiana State Constitution requires no less. *Brown v. State* (1959), 239 Ind. 358, 157 N.E.2d 174, 176. The purpose of this particularity requirement is to protect the public from general searches and to minimize the risk that officers executing search warrants will by mistake search a place other than the place intended by the magistrate. *Garrison, supra,* 480 U.S. at 84, 107 S.Ct. at 1016; 2 LaFave, Search and Seizure: A Treatise on the Fourth Amendment 207 (1987). By so limiting authorization, this requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide ranging exploratory searches that the framers intended to prohibit. *Garrison, supra,* at 84, 107 S.Ct. at 1016.

When facing a challenge for insufficient particularity, the state must demonstrate that the description contained in the warrant was such that an officer executing the warrant could, with reasonable effort, ascertain and identify the place intended. *Steele v. United States* (1925), 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757. A search warrant which vests the executing officer with discretion in these matters is invalid. *Brown, supra,* 157 N.E.2d at 176. The test is one of reasonableness. The Constitution does not require elaborate specificity. *United States v. Ventresca* (1965), 380 U.S. 102, 108, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684; *Conn v. State* (1986), Ind.App., 496 N.E.2d 604, 606, *trans. denied.*

In addition, the validity of a warrant must be assessed on the basis of information that the officers disclosed, or had a duty to discover and disclose, to the issuing magistrate. *Garrison, supra,* 480 U.S. at 85–86, 107 S.Ct. at 1017. Facts that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued in the first instance. *Id.*

Just as the discovery of contraband cannot validate a warrant invalid when issued, so it is equally clear that the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant. *Id.*

In the case at bar, the warrant correctly stated the defendants' name and mailing address. The officers, seeking to fill out the description, added to the correct information an incorrect physical description of the property. With the benefit of hindsight, we now know that the description was inaccurate and was conceivably broad enough to encompass two separate residences. This is not an unusual problem. As professor LaFave has observed, most of the problems that arise concerning the particularity in the description of premises to be searched are not brought about because of a facially-vague warrant description, but rather because upon execution a facially-sufficient description is found not to be as precise as previously assumed. Often only some of the descriptive facts apply to the property. LaFave, *supra,* at 211. This is what occurred in this case.

In this kind of situation, courts have been sympathetic to arguments demonstrating that the executing officers could not reasonably have executed the warrant against a property other than the one intended to be searched. *Id.* Post-issuance facts are often used to demonstrate that the description was sufficient when the warrant was issued. This is done by showing that with reasonable effort an officer could ascertain the place intended. For instance, in *State v. Blackburn* (1973), 266 Or. 28, 511 P.2d 381, 385, the Supreme Court of Oregon considered a warrant authorizing the search of apartment no. 2 which had the letters ECURB on the door. When the officers arrived, they discovered two separate apartments: one labeled no. 2, and one without a number but with the letters ECURB on the door. The court stated that no one could have made a mistake or been confused about a word like ECURB and that there was therefore no real doubt as to which premises was intend-

ed. *Id.* A search of the latter apartment was upheld. *Id.*

In a similar case, the warrant authorized the search of defendant Allen Schnorr and the residence at 1218 North First Avenue East. *State v. Schnorr* (1984), Minn.App., 346 N.W.2d 380, 382. When the officer arrived on North First Avenue, there existed no residence with the number 1218. The officer, knowing that there was no Third Avenue, proceeded to Second Avenue and knocked on the door of 1218 North Second Avenue East. The defendant answered the door and the officer recognized him as the defendant named in the warrant. The Minnesota court upheld the search of Schnorr's residence stating:

> The test for determining the sufficiency of the description of the premises is whether the description is sufficient so that the executing officer can locate and identify the premises with reasonable effort with no reasonable probability that [other premises] might be mistakenly searched.

*Id.* The court held that in that case there was no serious risk that another place would be searched. *Id.* at 383.

■ It is clear, then, that not all errors in a search warrant's description of a premises will invalidate a search. *Id.* Where there is identifying information in the warrant from which the executing officers can determine with a reasonable degree of certainty the premises intended, they may properly proceed with the search. *Blackburn, supra,* 511 P.2d at 385. Sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment. *Hill v. California* (1971), 401 U.S. 797, 803–04, 91 S.Ct. 1106, 1110–1111, 28 L.Ed.2d 484.

■ In our case there is no doubt that the officers intended to and did search the home of the defendants. They believed throughout the application process that the description of the property, incorporated into the warrant, correctly described the residence of David Pinder and no other. When they proceeded to execute the warrant they quickly discovered that the description was not as precise as they had assumed. Upon reaching the first residence, they were informed that they were at the wrong place. It was at this point that the officers discovered their error. No search was conducted at the first residence.[1] Once the factual error in the description was discovered, the officers were left with no real doubt as to the premises intended. *Blackburn, supra,* 511 P.2d at 385. In this kind of situation, where a factual error in the warrant will inevitably be discovered by the executing officers as they proceed to execute a warrant, and where the discovery of such error forecloses, through the reasonable effort of the officers, the possibility that a residence other than that intended will be searched, the description is sufficient. A warrant containing such a description, albeit imperfect, passes constitutional muster when issued and forecloses the possibility of general or unauthorized exploratory searches by the police.

■ Finally we note that even if the warrant in this case had failed to particularly describe the premises, the good faith exception to the exclusionary rule, set out in *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, would apply in this instance to save the evidence seized in the search. *See, United States v. Gordon* (1990), 5th Cir., 901 F.2d 48, 49–50, *cert. denied, Gordon v. United States* (1990), 498 U.S. 981, 111 S.Ct. 510, 112 L.Ed.2d 522; *LaFave, supra,* at 207. The *Leon* court ruled that suppression "cannot logically contribute to the deterrence of Fourth Amendment violations" if an officer acted in objectively reasonable belief that the warrant had been properly issued. *Leon, supra,* 468 U.S. at 918–20, 104 S.Ct. at 3418–19. However, as one exception to that rule, the Court stated:

---

1. *Garrison, supra,* requires that once an officer realizes that there has been a mistake of fact made in the description of a premises, he must restrict his efforts to those areas he knows are authorized and may not continue to search what he now knows to be unauthorized. *Garrison, supra,* 480 U.S. at 88–89 and n. 14, 107 S.Ct. at 1018–19 and n. 14.

[D]epending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*Id.* at 923, 104 S.Ct. at 3421.

Here, one who looked simply at the warrant, or both the warrant and the supporting affidavit, would not suspect that it was invalid. Any defect would appear only if the officers knew that the description given to them by their fellow officers did not correspond to the correct name and mailing address already on the application. The record in this case reveals that the officers knew no such thing and were convinced that this description correctly described only one residence, that of David Pinder. The asserted defect in this warrant was not facial in the sense used in *Leon. See, Gordon, supra,* at 50. The officers entertained the objectively reasonable belief that the warrant was proper when issued and that it comported with the Fourth Amendment. *Id.* Excluding the evidence here would, therefore, not serve as a meaningful deterrent to future Fourth Amendment violations. *Id.*

Issues III–V:

■ Defendants next contend that the evidence before the trial judge was insufficient to find that the 22 pounds of "green leafy substance" found in defendants' home was marijuana. We disagree.

In reviewing the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Johnson v. State* (1992), Ind.App., 587 N.E.2d 138, 139. Rather, we consider only the evidence most favorable to the State and any reasonable inferences to be drawn therefrom, to see if there is substantial evidence of probative value to support the verdict. *Id.*

In this case, the state brought forth evidence showing that a baggie of "green leafy substance," found in defendants kitchen freezer, was tested by a forensic chemist and found to contain marijuana. The other 22 pounds, while not formally tested by the chemist, was visually, tactilely, and by smell, identified at trial as marijuana by both the chemist and the officers involved in the search. This evidence is sufficient to allow the trial court to infer that the 22 pounds of "green leafy substance" found in defendants home was marijuana and to sustain defendants conviction for dealing in marijuana by possessing with intent to deliver marijuana in excess of 10 pounds.

■ Defendants also contend that the evidence before the trial court was insufficient to demonstrate that they constructively possessed marijuana. It is firmly established by Indiana cases construing possession under the controlled substance acts that conviction of possession of controlled substances can be supported by proof of either actual or constructive possession. *Satterfield v. State* (1984), Ind.App., 468 N.E.2d 571, 572, *trans. denied.* Where the contraband is found in a premises exclusively controlled by the defendant, an inference is permitted that he had constructive possession of any drugs found therein. *Id.* The element of knowledge can reasonably be inferred from the exclusive control of the premises. *Id.* Even if control of the premises is non-exclusive, constructive possession may be inferred by showing evidence, in addition to non-exclusive control, that demonstrates that the defendant had knowledge of the contraband. *Id.* at 572–73.

In this case, the record indicates that the defendants constructively possessed the marijuana found in the home. When the officers knocked on the door at approximately 5:00 A.M., defendant Kline answered the door. A bank book in defendants' name was found in what the officers described as the master bedroom along with an employee record belonging to defendant Ewing. In addition, a photo showing defendants together was found. The record also indicates that marijuana was found in large open trash bags in almost every room of the home including the master bedroom, another upstairs bedroom, a downstairs bedroom, the living room (spread out on the coffee table), and in the

kitchen freezer. At the very least the defendants would have had knowledge of its existence in the home. The evidence is quite sufficient to demonstrate constructive possession.

 Finally, the defendants challenge the sufficiency of the evidence regarding their conviction for maintaining a common nuisance. Again, the evidence is sufficient.

Maintaining a Common Nuisance is defined in IC 35–48–4–13(b):

A person who knowingly or intentionally maintains a building, structure, vehicle, or other place that is used:

(1) by persons to unlawfully use controlled substances; or

(2) for unlawfully:

 (A) keeping;

 (B) offering for sale;

 (C) selling;

 (D) delivering; or

 (E) financing the delivery of;

controlled substances, or items of drug paraphernalia as described in IC 35–48–4–8.5; commits maintaining a common nuisance, a Class D felony.

From our discussion above it is clear that there was ample evidence presented to show that defendants resided in the house and were fully aware of the drug related activity occurring there. The trial judge could reasonably infer from the facts in the record that defendants knowingly or intentionally maintained the home and that the home was being used for the purposes proscribed by the statute.

CONCLUSION:

For the foregoing reasons, the judgment of the trial court is affirmed.

SHARPNACK and STATON, JJ., concur.