Argued and submitted June 17, affirmed September 29, 2010, petition for review denied January 14, 2011 (349 Or 601)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RONALD ALAN EVERETT,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0602017; A138698

240 P3d 102

George W. Kelly argued the cause for appellant. On the opening brief were Peter Gartlan, Chief Defender, and Erica Herb, Deputy Public Defender, Office of Public Defense Services. Ronald Alan Everett filed the supplemental brief *pro se*.

Samuel A. Kubernick, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Brewer, Chief Judge, and Edmonds, Senior Judge.

EDMONDS, S. J.

## EDMONDS, S. J.

Defendant appeals from convictions for attempted assault in the second degree, ORS 161.405(2)(c); ORS 163.175, felony attempt to elude a police officer, ORS 811.540(1)(b)(A), unauthorized use of a vehicle, ORS 164.135, and failure to perform the duties of a driver, ORS 811.700. On appeal, he makes four assignments of error. We write to address defendant's first assignment of error, reject his remaining assignments of error without discussion, and affirm.

While on patrol at approximately 1:00 a.m., a deputy sheriff was dispatched to an apartment complex to search for suspects involved in a theft from a convenience store. When the deputy arrived on the scene, she observed a vehicle that was consistent with the description of a vehicle that, according to police records, had been stolen. The officer activated the overhead lights on her patrol car and pursued the vehicle. Eventually, she cornered the vehicle in a parking spot under a carport. At that point in time, the deputy got out of her car and approached the vehicle with her gun pointed at the driver. The driver then put the car into reverse and began ramming the patrol car with the rear of his vehicle. In the melee that ensued, the driver was able to maneuver his vehicle around the patrol car and accelerated in the direction of the deputy. She fired three shots at him, but he was able to escape without striking her. The officer believed that she had wounded the driver before he left the scene.

Through other information, the police developed the belief that defendant had been the driver of the vehicle. They also received information that he had been shot in the arm while escaping. The police applied to a magistrate for arrest and search warrants. One of the warrants was for the search of defendant's person. It commanded the police to search defendant and to seize, in part, "[b]ullets and bullet fragments." After receiving the warrants, the police went to defendant's parents' residence to search for him, located him there, and arrested him. At the time, defendant's arm was wrapped with a bandage, and he was taken by ambulance to a local hospital. When defendant arrived at the emergency room of the hospital, his medical condition was assessed by

medical staff. They determined that he had suffered a bullet wound to his upper arm and that the bullet remained lodged in the back of his arm just under the skin. Defendant refused to consent to the removal of the bullet. Nonetheless, medical staff removed the bullet.

Before trial, defendant moved to suppress all evidence that was the product of the procedure to remove the bullet from his arm. He argued that, because the search warrant and its supporting affidavit did not specifically request surgery to remove the bullet, the surgery violated his constitutional rights against unreasonable searches and seizures. The state countered that the removal of the bullet from defendant's arm was authorized by search warrant. The trial court denied defendant's motion, and defendant was ultimately convicted of the above-listed crimes.

Defendant asserts that the trial court erred under the Fourth Amendment to the United States Constitution and Article I, section 9, of the Oregon Constitution when it denied his motion to suppress the evidence of the bullet that had been surgically removed from his arm.[1] We understand defendant's arguments on appeal to frame three issues: (1) whether the Fourth Amendment requires an adversarial hearing before a search warrant issues when the evidence sought requires the person to be searched to undergo a surgical procedure as part of the search; (2) whether the Fourth Amendment requires that an affidavit expressly request a surgical procedure and a search warrant to expressly authorize a surgical procedure before such a procedure is constitutionally permissible; and (3) whether the warrant in this case authorized the surgical procedure performed on defendant.

---

[1] The Fourth Amendment provides, in part:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *."

Article I, section 9, provides, in part, that

"[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *."

Defendant argues that his rights under both constitutions were violated in this case but makes no separate argument under Article I, section 9. Consequently, we treat his claim of error as only a claim under the Fourth Amendment.

■      The state agrees that defendant properly preserved his first claim of error in the trial court. However, based on our review of the record, we agree with the state's concession only in part.[2] Defense counsel's framing of the issues in the trial court was somewhat inartful. Nonetheless, the trial court's rulings in response to counsel's argument are a model of clarity as it understood the issues framed by counsel.[3] The trial court ruled that it was not constitutionally necessary that the affidavit filed in support of the request for a search warrant contain a "specific prayer" for a surgical procedure to recover the bullet and that the language of the warrant sufficed to authorize the recovery of the bullet. Defendant did not ask the trial court to rule that a presurgery adversarial hearing was a constitutional prerequisite, and that issue is qualitatively different from the issues he did raise in the trial court. Consequently, that issue is not properly before us.

We agree, however, with the state that defendant adequately preserved the remaining issues. In response to defendant's arguments, the state counters:

> "Furthermore, the search warrant, when read in its entirety and in a commonsense manner, implicitly authorized removal of the bullet. To be sure, the search warrant did not explicitly state that a medical procedure would be required to find and seize the bullet. However, the warrant authorized a search of defendant, and specifically authorized the seizure of bullets and bullet fragments. The supporting affidavit indicated that defendant had been shot in his arm while trying to 'escape capture by the police,' and that defendant had not sought medical attention. Under those circumstances, the warrant clearly contemplated that a medical procedure would be necessary to remove the bullet from defendant's arm, and, by implication, authorized such a procedure."

■      In analyzing the above issues, it is important to differentiate them from an issue that is not before us, and a

---

[2] ORAP 5.45(1) provides, in part, that "[n]o matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * *."

[3] We commend trial courts that engage in the practice of clarifying issues that are before them in their own words. That practice enables trial counsel to correct any misperception on the part of the court and assists appellate courts in understanding the issues actually litigated in the trial court.

review of certain United States Supreme Court case law is helpful in that regard. As the Supreme Court recognized in *Schmerber v. California*, 384 US 757, 86 S Ct 1826, 16 L Ed 2d 908 (1966), the overriding function of the Fourth Amendment is to protect personal privacy and dignity against "unwarranted intrusion by the State." *Id.* at 767. Thus, the Fourth Amendment does not constrain all intrusions by the state on the expectation of privacy interests in the human body, but only those "intrusions which are not justified in the circumstances, or which are made in an improper manner." *Id.* at 768.[4] In *Winston v. Lee*, 470 US 753, 105 S Ct 1611, 84 L Ed 2d 662 (1985), the Court considered a lower court's decision enjoining the Commonwealth of Virginia from compelling the respondent to undergo surgery to remove a bullet that was lodged in the muscle tissue of his chest. The court weighed the risks and intrusiveness of the proposed surgery against the state's need for the evidence and concluded that, "in these circumstances[,] the Commonwealth has failed to demonstrate that it would be 'reasonable' under the terms of the Fourth Amendment to search for evidence of this crime by means of the contemplated surgery." *Id.* at 766.

In contrast to the above cases, we do not understand defendant to argue that the trial court erred in the performance of the balancing test required by the Fourth Amendment or by ruling that the invasion of defendant's privacy was outweighed by the state's need for the evidence of the bullet fragment. Rather, defendant's argument, as it was preserved in the trial court, is that the removal of the bullet was an unauthorized search that exceeded any search authorized by the warrant in the absence of a specific request or authorization for such a search.

Under a "first things first" approach, we ordinarily assess the scope of the search warrant to determine whether it satisfies applicable statutory requirements. In general, whether a search exceeds the authority granted by a warrant

---

[4] In *Schmerber*, the Court held that exigent circumstances justified the taking of a blood sample from a defendant, who was charged with driving while under the influence of intoxicants, by a physician in a hospital under accepted medical practices.

is governed by the terms of the warrant. ORS 133.565 provides, in part, that

> "(2) The warrant shall state, or describe with particularity:
>
> "\* \* \* \* \*
>
> "(b) The name of the person to be searched, or the location and designation of the premises or places to be searched;
>
> "(c) The things constituting the object of the search and authorized to be seized[.]"

In *State v. Ingram*, 313 Or 139, 143, 831 P2d 674 (1992), the Oregon Supreme Court construed "ORS 133.565(2)(b) to be at least as restrictive as the constitutional prohibitions against general warrants." Conversely, if the scope of a search complies with a search authorized under ORS 133.565(2)(c), it also comports with the requirements of the Fourth Amendment. In *State v. Blackburn/Barber*, 266 Or 28, 34, 511 P2d 381 (1973), with reference to the "particularity requirements" of the Fourth Amendment and Article I, section 9, the court explained:

> "It has been explained that 'the historical motivation for this constitutional mandate was a fear of "general warrants" giving the bearer an unlimited authority to search and seize.' More specifically, the aim of the requirement of particularity is to protect the citizen's interest in freedom from governmental intrusion through the invasion of his privacy. If the search warrant describes premises in such a way that it makes possible the invasion of this interest in privacy without the foundation of probable cause for the search, the warrant is too broad and therefore constitutionally defective."

(Footnotes omitted.)

■     The search warrant at issue in this case provides, in part:

> "TO ANY POLICE OFFICER IN THE STATE OF OREGON, GREETINGS:
>
> "You are hereby commanded to search:
>
> "The person of [defendant] \* \* \*

"And seize the following described property:

"Bullets and bullet fragments. D.N.A. in the forms of oral swabs, blood samples, head hair samples, Photographic images, and any other indicators of his having been shot or being involved in this incident."

■ We conclude that the warrant's authorization in this case does not suffer from a lack of particularity because of too much generality in its terms, nor does defendant appear to argue to the contrary. The warrant specifically directs a search of defendant's person for specific items—bullets and bullet fragments. Also, it is apparent from the contents of the affidavit in support of the issuance of the above search warrant that the police had probable cause to believe that defendant had been wounded by the deputy and that a search of his person more likely than not would yield the discovery of bullets and bullet fragments. Defendant's argument, when reduced to its core, consists of an argument under the Fourth Amendment that an additional procedural prerequisite is constitutionally required when dealing with the surgical removal of potential evidence from a suspect's body. Defendant explains:

"Once the state had defendant in custody and had learned that there was a bullet lodged in his arm, it could have sought a second search warrant that specifically authorized the bullet's surgical removal. When defendant was arrested, he was immediately taken to the hospital and examined by doctors. The police could have obtained a medical opinion of the risks to defendant's health and the level of intrusiveness that the surgery posed from those doctors and submitted those details in an affidavit for another search warrant. However, the state completely disregarded defendant's constitutional rights and forced him to undergo surgery, choosing instead to rely upon the general search warrant that did not authorize the surgery. The state's failure to follow the minimal procedural requirements to obtain a search warrant that specifically authorized the surgical removal of the bullet from defendant's arm violated his Fourth Amendment rights to be free from unreasonable search and seizure."[5]

---

[5] The state appears to accept defendant's implicit premise that the surgery constituted "state action" and was not a part of defendant's medical treatment.

We do not disagree with defendant's underlying policy assertion regarding the importance of the privacy interest involved. Preliminarily, however, it seems to us that the safeguards of the probable cause requirement for the issuance of a warrant, the procedure for suppression of evidence, and the utilization of the balancing test adopted by the *Winston* court adequately protects the privacy interests involved and provides court oversight of such procedures in most circumstances. We also hold that a common-sense reading of the affidavit and the terms of the warrant in this case implicitly authorized the extraction of the bullet that lay just underneath defendant's skin. Indeed, the warrant expressly authorized other invasive searches of defendant's body, including oral swabs, blood samples, and hair samples. In light of all of these circumstances, there was no violation of the Fourth Amendment.

Affirmed.